HUMBOLDT DRIVING PARK ASS'N ET AL., APPELLEES,
v. W. F. STEVENS ET AL., APPELLANTS.

[FILED MAY 18, 1892.]

1. **Corporations:** ISSUE OF STOCK: SHAREHOLDERS' PRIOR
RIGHT TO THE INCREASE. A corporation can issue its stock
only by direction of the corporation, and unless there are stipu-
lations in its charter to the contrary, its stockholders are en-
titled *pro rata* to a preference in the purchase of the new stock.

2. ——: ——: INJUNCTION. Stock held to have been illegally
issued and injunction properly granted.

APPEAL from the district court for Richardson county.
Heard below before BROADY, J.

*C. Gillespie*, for appellants.

*E. W. Thomas,* and *R. S. Malony, contra,* cited: *State
v. Smith,* 15 Pac. Rep. [Ore.], 386; *Hartt v. Harvey,* 32
Barb. [N. Y.], 55; Morawetz, Corp., sec. 485, 512, 543;
*Webb v. Ridgely,* 38 Md., 365; *R. Co. v. Allerton,* 18
Wall. [U. S.], 233.

MAXWELL, CH. J.

This action was brought in the district court of Rich-
ardson county to restrain the defendants from exercising
the duties of directors of the plaintiff and taking possession
of the property. A demurrer to the petition was overruled
in the court below, and the defendants electing to stand on
the demurrer, judgment was entered in favor of the plaint-
iffs as prayed. The only question is, Does the petition jus-
tify the judgment? It is as follows:

"The plaintiffs above named represent unto the court that
they are all residents of Richardson county, Nebraska, and
are now, and have been for several months past, members

of and stockholders in the Humboldt Driving Park Association, a corporation incorporated under the laws of Nebraska, with its place of business at Humboldt, in said county of Richardson; the said corporation was incorporated on or about June 29, 1886, at which time F. W. Samuelson, O. A. Cooper, E. K. Kentner, H. F. Hull, R. S. Malony, Jr., and five other persons who were residents of said county of Richardson, associated and incorporated themselves under the name aforesaid, with the place of business at Humboldt in said county, for the promotion and advancement of the breaking and development of horses by keeping a driving park and holding horse fairs and race meetings and other transactions of like nature pertaining to the general business of a driving park association, and the said corporation did then and there adopt articles of incorporation and had the same recorded in the office of the county clerk of said county; the said articles of incorporation contained, among others, the following provisions, to-wit:

"Art. 4. The capital stock of the incorporation shall consist of $1,000, with an authorized capital of $5,000. At least one-fourth of the capital stock shall be paid in by the 1st day of August, 1886, and the balance at such times and places and in such amounts as the board of directors shall direct.

"Art. 5. The stock shall be divided into shares of five dollars each.

"Art. 8. The business and affairs of said corporation shall be conducted by a board of directors composed of nine stockholders, who shall elect from their number a president, vice president, secretary, treasurer, and such other officers as may be necessary to transact the business of the corporation.

"Art. 9. Each share of the stock shall be entitled to one vote in all elections of directors for said corporation, and such elections shall be by ballot.

37

"Art. 10. The annual election of directors by the stockholders shall be on the second Friday of August of each year, etc.

"The said articles of incorporation were duly recorded in the office of the said county clerk on August 7, 1886, and said association has been acting as a corporation thereunder ever since that time. At the time said association so commenced business in 1886, by vote of its stockholders, authorized the issuing and sale of stock to the amount of $1,000, or 200 shares of stock at $5 each, and it actually issued over half of that number of shares, that is to say, about 115 shares, all of which were duly paid up in full and certificates for that number of shares were issued and delivered to the purchaser thereof. Afterwards, on April 11, 1889, the corporation, by a vote of its stockholders at a meeting held for that purpose, increased its capital stock by authorizing the issuing of an additional number of shares sufficient with the number already issued, as above stated, to raise the capital stock to $2,500 in the aggregate, and no more. Under said authority, about 375 additional shares were issued and sold, and were paid for in full, and certificates for that number of shares were issued and delivered to the purchasers thereof. Neither said corporation nor the stockholders thereof have ever issued or authorized any person to issue any other or additional shares of stock besides those above mentioned, and no others have ever been issued legally or by authority. On the second Friday of August, 1889, at a meeting of the stockholders, the following named persons were duly elected directors, to-wit: R. S. Malony, Jr., who was afterward elected by said directors as president; P. Y. Hays, afterwards elected in like manner vice president; E. K. Kentner, afterwards elected treasurer; A. H. Fellers, afterwards elected secretary, and also J. L. Linn, Ed. Dorland, W. F. Garver, John Power, and O. A. Cooper, and said directors and officers forthwith entered upon the duties of their offices, and have conducted the same ever since.

"At a meeting of the stockholders held on the second Friday of August, 1890, for the purpose of electing officers for the ensuing year, at which time there had been issued only 460 shares of stock in the aggregate, the following proceedings were had : Some hours before said election commenced said Pyle, for the purpose of defrauding the stockholders and illegally obtaining control of the corporation and its business against the wishes of its stockholders, fraudulently induced Fellers, the secretary, to receive from him a draft for $2,400 as in payment of 480 additional shares which had never been authorized by the association, and also fraudulently induced him to keep said transaction concealed from the directors and stockholders so that none of said parties had any knowledge that it was claimed that any such additional shares had been paid for or issued until the matter was suddenly sprung upon them while the election was taking place, and when they were taken by surprise and could not stop the proceedings. Said Pyle fraudulently caused those persons to be chosen tellers at the election, and after voting the 480 fraudulent votes caused the same to be received and counted as if they had been that number of legal and valid votes, said Pyle voted said 480 illegal and fraudulent votes together with about 23 legal votes he owned, for the defendants to this petition named at the heading thereof, as directors of said association for the ensuing year; of the legal and valid shares and votes of the association only 409 were voted at that election, and a majority of those votes, as your petitioners have reason to believe, and do believe, were cast for the following named stockholders as directors: Charles Nims, O. A. Cooper, R. S. Malony, Jr., J. E. Kentner, W. O. Quick, P. W. Hayes, Ed. Dorland, W. F. Garver, and J. Collins. Your petitioners are unable to state the number of votes cast for said last named persons for the reason that when the counting of the votes cast began after the 480 illegal votes cast by Pyle, together with 23 legal votes owned by him, and not more than 34

other votes had been counted, a person, acting fraudulently
with Pyle and at his instance claiming that said votes then
already counted constituted a majority of the stock, moved
that no further votes be counted and that the nine persons so
voted for by Pyle and his fraudulent votes be declared elected
as directors; said motion was put 'viva voce' and not by bal-
lot, and said Pyle and those acting at his instance procured
said motion to be declared carried and no other votes were
counted and no record was made of them. If said fraudulent
votes had not been counted and only the legal votes had
been counted then the said persons so voted for said Pyle
would have been defeated by a considerable majority and
the other ticket, that is to say, the one containing the
names above mentioned, as plaintiffs verily believe, would
have been elected by a majority; until just previous to
the beginning of said election the stockholders did not
know that Pyle claimed to have said fraudulent shares, no
money for said fraudulent shares has ever been paid to
said corporation or its treasurer and no certificates of such
shares have ever been issued, and said corporation has
never incresed its capital stock over $2,500 in the aggre-
gate, nor authorized the issuing of such additional shares;
of all of the above facts said Pyle and defendants then
and there had full notice and knowledge and he was then,
and had been since April, 1889, a member of said corpo-
ration and the owner of several shares; said association is
the owner of a race track at Humboldt, a tract of land
containing twenty acres, fenced, and other buildings thereon,
suitable for a race course, all worth about $3,000, on
which, however, there is a mortgage for $700. The said
Pyle and the other defendants have demanded from the
secretary and treasurer of the association elected in 1889
the books and records of the corporation, but the delivery
thereof has been refused and they have not got possession
of the same. If not enjoined the defendants will issue
certificates for the said 480 illegal and fraudulent shares

and there is great danger that the same may get into the hands of innocent purchasers and become obligations of the corporation. Defendants threaten to tear down a part of the fence around the race track and thereby greatly injure the same. All of the above would be productive of great and irreparable injury to the stockholders and the association. There is also great danger that the defendant, if allowed to take possession of said land and property, will give race meetings and offer large premiums and purses for races and will thereby involve the association in debt or in expensive litigation, and that they will do other acts which will involve the association in trouble and litigation, thereby causing great and irreparable injury, expense, and trouble.

"Plaintiffs further allege that the said directors elected in August, 1889, as above set forth, are the present officers of the association and that they hold over as such directors, officers in consequence of no valid election having been held in August, 1890. Plaintiffs therefore pray that the defendants be enjoined from taking possession of the said race track, or the books or records, or any other property of the association, and that defendants refrain from interfering with the directors elected in August, 1889, as above stated, in the management of the business of the association; also that the defendants be enjoined from issuing any·certificates of stock or from doing any official act as directors of the association; that the court find that the defendants have no legal right to act as directors of the association. Plaintiffs further pray that a preliminary injunction be issued forthwith restraining defendants as above prayed and that on a final hearing said injunction be made perpetual; that plaintiff may have such other relief as equity and justice may require; that said Pyle be enjoined from negotiating or disposing of any certificate said defendants may have undertaken to issue, and that the same be adjudged fraudulent and void and be ordered

delivered up and canceled, and that the said last election be decreed void and a new election ordered."

As the allegation of the petition for the purpose of the trial must be taken as true, it is therefore conceded that the association never authorized the issuing of the 480 shares of stock which Pyle sought to vote, and that, in fact, such shares were fraudulent and illegal; that a majority of the legal votes were cast against the defendants, and that, in fact, they were not elected. These facts being conceded, the judgment is right. The increase of capital of a corporation is intended for the benefit of the joint owners and can be exercised only by the corporation itself, and in the absence of stipulations to the contrary in the charter, the original stockholders have a right to subscribe for and hold the new stock.

The rule as stated by Angell & Ames on Corporations, sec. 554, is as follows: "If a part of the authorized capital stock of a corporation remains untaken at the time of its incorporation, the right to issue the remainder of it is a corporate franchise, held by the corporation in trust for the corporators, and it is to be disposed of for the benefit of all; and the directors have no right to distribute such shares of stock among those of the stockholders merely who are not in arrears on the shares already taken by them, and exclude those who are in arrears. And a share in the stock of a corporation, when only the least sum mentioned in the charter has been paid in, is a share in the power of increasing it when the trustee (the corporation) determines, or rather when the original shareholders (the *cestuis que trustent*) agree upon employing the greater sum mentioned in the charter. The augmentation of the capital to the larger sum is supposed to be intended for the profit of the joint concern; the capacity under the charter to augment it is the virtue of their joint interest. If a corporation, in other words, is created with the privilege of raising a stock not less than one sum, nor exceeding a certain greater sum, and

commence business with the smaller capital and it is afterwards decided by a vote to augment it to the greater, an original subscriber has, as a stockholder, a right to subscribe for and hold the new stock in proportion to his interest in the old stock." The reason is plain. A number of persons relying upon the integrity of each other might be willing to become members of a corporation, while they would not become such members if the stockholders were unknown. This is particularly applicable in case of small corporations like that of a driving park. The judgment of the court below is right and is

.    **AFFIRMED.**

THE other judges concur.