LUTHER and others, Appellants, vs. THE C. J. LUTHER COMPANY and others, Respondents.

SAME, Respondents, vs. BOLENS, imp., Appellant.

*December 20, 1902—May 29, 1903.*

*Corporations: Rights of stockholders: Directors: Breach of duty: Issue of shares of stock to control corporation: Equity: Remedies: Waiver: Practice.*

1. On questions of corporate policy, the stockholders, subject to· temporary control by the board of directors, have the ultimate right to decide according to majority vote.
2. A majority of a board of directors of an already established and going corporation, representing the one of two factions which

Luther v. C. J. Luther Co. 118 Wis. 112.

had the minority of the capital stock, availing themselves of the temporary constitution of the board, ·exercised the power thus vested in them to sell a quantity of unissued original stock to a confederate, for the purpose of placing in hands favorable to their policy a majority of the total corporate stock. No opportunity was given to all existing stockholders to take their proportionate share of such increase. *Held*, that such sale was a breach of duty of the participating directors, and conferred no rights upon the purchaser who knew of and participated in the unlawful act and purpose.

3. In such case, there being no circumstance of delay, acquiescence or change of position in innocent reliance upon the validity of the stock issued, equity should decree the invalidity of such stock and cancellation of the certificates; that upon surrender of such certificates the corporation should repay the amount paid for such stock, without interest, less dividends received; also that all elections of directors by use of such stock should be decreed invalid, as well as any election of the general officers by such illegally chosen board of directors, and that the participants in the wrongful transaction be enjoined from using such stock, or claiming or exercising any rights as officials.

4. In an action by stockholders of a corporation against the corporation and certain directors and stockholders, to set aside the issue and sale of corporate stock made by a majority of the board of directors to a friend, for the purpose of obtaining unlawful control of the corporation, the complaint alleged, among other breaches of duty by such directors, the taking out a patent by one director in his own name which ought to belong to the corporation. No issue was raised by the complaint as to the title to the patent, or relief in regard thereto prayed. Judgment was entered in the action requiring the director to transfer such patent to the corporation. *Held*, error, since the evidence relating to the patent was admissible, and apparently offered on other issues than the corporation's right to the patent, and the director was not thereby so placed that silence on his part could be deemed a waiver of objection to the trial, in that action, of title to the patent.

APPEALS from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

The findings disclose substantially the following material facts: In 1897, *C. J. Luther* had been building up a trade in machines called "sickle grinders," made generally under

a patent to one Caysier, under which he had a state right, until in that year his sales had reached about 2,000 machines and his annual profits about $1,500. The machines had been made for him by the Gilson Manufacturing Company, engaged in foundry and ironworking business at Port Washington, and including amongst its stockholders all of the individual defendants. In 1897, it appearing that a machine of this character met a demand and could be sold at a substantial profit, but that *Luther* had not capital to fully develop it, and the owners of the Gilson Company being desirous of retaining and increasing the work for their factory in the manufacture of such machines, a corporation for the purpose of vending sickle grinders and the like was organized, upon a nominal capital of $25,000, called the *C. J. Luther Company.* Something over $5,000 in money was contributed for stock at par by those interested in the Gilson Manufacturing Company, and $1,000 by Luther, in addition to which there were issued 124 shares of $100 each for the patents and good will of *Luther's* business, which all parties agreed was worth $5,000, but the surplus, seventy-four shares, was distributed, one half to *Luther* and one half to the Gilson Company people, as a sort of promoters' bonus. The board of directors then created consisted of *C. J. Luther,* who was also president, *T. A. Boerner,* vice president and treasurer, and *Harry W. Bolens,* secretary. The business was quite successful, resulting in the manufacture and sale of some 15,000 machines in 1898 and some 19,000 in 1899; the detail of the machine manufactured being changed from time to time by reason of improvements that were made in the Gilson shops, either by *Bolens* or Gilson, or some of their employees, part of which were patented in the name of *Luther,* by consent of all, and others were embodied in a complete device patented in the name of Neuens, a patternmaker for the Gilson Company, and another in the name of *Bolens.* There seems to have been some degree of suspicion between *Luther*

on the one side and the members of the Gilson Company on the other, characterized on the part of the latter by the acquisition of patent rights which were held in individual names and withheld from the *Luther Company,* with the view that the Gilson Company should be in position at any time to take up the manufacture and sale of sickle grinders, and characterized on the part of *Luther,* in the year 1899, by the formation of a partnership of himself and brothers with Neuens, above mentioned, and the actual establishment of a competing business under the firm name of Luther Bros. & Neuens. Prior to August 6, 1899, a date when the trouble out of which this action arises crystallized, the board of directors and officers were as above stated, and the stock was held as follows: *Clarence J. Luther,* seventy shares; *George H. Luther,* twenty shares; *Charles Luther,* three shares; *Herbert J. Noyes,* ten shares; *Alida Nicholas,* two shares; and R. W. Nicholas, three shares—all of the above holders of a total of 108 shares being connected with and related to *Clarence J. Luther,* and permitting him to control the vote of their stock. The rest was held: Boerner Bros. Association, forty-nine shares; G. A. Boerner, six shares; H. C. Boerner, six shares; *T. A. Boerner,* six shares; *A. R. Boerner,* six shares; John Gilson, ten shares; and *Harry W. Bolens,* eleven shares—making 94 shares held by those interested in the Gilson Manufacturing Company. All of this stock seems to have been issued by mutual consent, and no question is raised as to its validity. In addition to this, an issue of four shares of stock, the validity of which is not seriously attacked, was made shortly after August 6th to *Harry W. Bolens,* for which he had formerly, and by mutual consent, subscribed, but which had never been issued to or paid for by him; also of five shares, which, against the protest of *Luther,* was made to one George H. Crowns shortly after August 6th in payment for a building lot in Port Washington; so that on August 6th there were, of undisputed stock, 202 shares, and of not seri-

ously disputed stock nine shares, leaving thirty-nine shares, unsubscribed and unissued, of the original stock. On August 6th *Arthur R. Boerner,* already a stockholder, made subscription for ten shares of stock at par. This subscription was protested against by *Luther,* who refused to join in the issue of certificate, and attempted to send the money back to *Arthur R. Boerner;* but, by vote of the other two members of the board of directors, it was issued to him, and a certificate was signed by *Bolens* as secretary and by *T. A. Boerner* as vice president. Shortly thereafter Luther offered to subscribe for eighteen shares of the remaining twenty-nine, and to pay therefor $120 a share. *Arthur R. Boerner* thereupon offered to take the whole remaining twenty-nine shares, and to pay $120 per share for eighteen of them and par for the balance. Against this, *Luther* protested, and under advice of counsel the plaintiffs made demand that they be permitted to take their proportionate part of any new stock to be issued; but the board of directors, meeting in adjourned meeting on August 14th, resolved that it was not for the best interests of the company that *C. J. Luther* should have control of a majority of the stock, that *Arthur Boerner* was a desirable member of the corporation by reason of his business ability and financial strength, and that his offer for the remaining twenty-nine shares of stock be accepted, and there be issued to him by the secretary and president or vice president, not only the ten shares for which subscription and payment had already been received, but also the remaining twenty-nine shares. *Luther,* as director, opposed this, but was outvoted, and the certificates were issued, signed by the vice president, for the reason that *Luther,* as president, refused to sign them. Thereafter, counter offers were made to sell out entire stockholdings by *Luther* and his party to the Gilson Manufacturing Company party, and by the latter to the former, which came to naught. *Luther* resigned as president and director.

The court finds as facts that while additional capital was

convenient to the company, it having occasion at times to need large credit and considerable financial backing from its stockholders, there was no special need of it; that as a matter of business policy the advisability of the sale might fairly be approved by the directors; that the conduct of *Luther* in establishing competing business and attempting to undermine the prosperity of the corporation ·fully justified the other directors in believing that his control of the corporation would be prejudicial to its welfare; that the true and dominant purpose inducing the issue of this stock by the directors, and the subscription and purchase thereof by *Arthur Boerner,* was in order to secure control and direction of the company and its business to the faction which we have characterized as the Gilson Manufacturing Company faction, as against *Luther* on the other side; that, if the directors had power so to do, they were justified in accepting the proposition of *Boerner* and in rejecting that of *Luther,* under the circumstances then existing.   On October 17, 1899, the present action was commenced, praying judgment that all of the aforesaid subscriptions by *Arthur Boerner* for the stock of the *Luther Company* be adjudged void and of no effect; that the company be enjoined from accepting any subscriptions and from receiving any money or property as payment therefor, and from issuing any certificates, until the offer of these plaintiffs to subscribe for their proportionate share thereof shall have been accepted, and certificates of stock issued to them in the proportions specified; and meanwhile for temporary injunction. The complaint seems to have been accompanied by an order to show cause for temporary injunction, containing a restraining order that the *Luther Company* and the two directors and officers, *T. A. Boerner* and *Harry W. Bolens,* desist from accepting any subscriptions from any person, or payment upon any, and from isssuing any certificates, and from receiving at any election or stockholders' meeting any votes representing any of the stock unsubscribed and unissued on August

6th, and that *Arthur Boerner* desist from subscribing, paying for, receiving certificates, or attempting to vote any such stock. On October 24, 1899, plaintiffs' motion for a temporary injunction was denied, without prejudice, and the above-mentioned restraining order was set aside. Thereupon, on November 6th, at the regular time, the annual stockholders' meeting of the *C. J. Luther Company* was held. *C. J. Luther,* as stockholder, moved to exclude from vote the thirty-nine shares of stock held by *Arthur Boerner* as the result of the proceedings above mentioned. Vote being taken on this motion, the plaintiffs' 108 votes were cast in favor of it; the votes of 103 shares of stock, other than the thirty-nine in dispute, against the motion; and, against the protest of the plaintiffs, *Boerner's* controverted thirty-nine shares were allowed to vote, and voted against the motion, thus making a majority against it. The vote for directors developed the same figures. The 108 shares of stock held by the plaintiffs cast their votes for a board of directors comprised of *C. J. Luther, George H. Luther,* and George H. Crowns. All the other votes, aggregating 142, were cast in favor of *Arthur R. Boerner, Theodore A. Boerner,* and *Harry W. Bolens* as directors. The latter were declared chosen, and apparently are still acting in that capacity, supported therein by the same vote. Obviously, if the thirty-nine shares of stock held by *Arthur Boerner* had not been voted, there would have been a majority in favor of the Luther directors and against the defendant directors. After said meeting, the complaint was amended to set up the facts thereof and to pray further relief, vacating the election of said directors, correcting the minutes so as to show the election of the Luther directors, and requiring the defendant directors to turn over the control of the company books, records, etc., to the Luther directors, whom it asks should be adjudged to be the directors of the corporation. It also repeated the prayer that said stock subscription and certificates of stock held by *Arthur*

*Boerner* be adjudged void and canceled.   Upon the findings the court adjudged that the board of directors, in August, 1899, were within their legal powers in accepting *Arthur Boerner's* subscriptions and in issuing stock to him; and accordingly denied all relief looking to the invalidating thereof; but also, upon a finding that a certain patent taken out in the name of *Bolens* had been taken at the expense of the company, and under an agreement by him that it should belong to the corporation, the court further adjudged that *Bolens* should assign such patent to the corporation.   The plaintiffs appeal from all parts of this judgment except that which adjudges the corporate ownership of the patent, and predicate their appeal upon the findings, having settled no bill of exceptions and having filed no exceptions to the findings.   The defendant *Bolens* appeals from that portion of the judgment requiring him to assign his patent to the corporation, and upon that appeal has brought up a bill of· exceptions showing all the evidence, and his exceptions to the findings made by the court and to refusal of findings requested by the defendants.

For the plaintiffs there were briefs by *W. J. & J. H. Turner,* and *Turner, Pease & Turner,* and oral argument by *W. J. Turner.*   They contended, *inter alia,* that the court erred in holding that the board of directors had authority to sell the thirty-nine shares of unissued stock to whosoever they pleased; and that the plaintiffs had no right to subscribe for the same in proportion to their holding.   *Jones v. Morrison,* 31 Minn. 140, 16 N. W. 854; *Dousman v. W. & L. S. M. & S. Co.* 40 Wis. 418; *Putnam v. Sweet,* 2 Pin. 302; *Nazro v. M. Mut. Ins. Co.* 14 Wis. 295; Taylor, Corp. (5th ed.) § 569; *Humboldt D. P. Asso. v. Stevens,* 34 Neb. 528, 52 N. W. 568; *Jones v. C. & M. R. Co.* 67 N. H. 234; *Hammond v. Edison Illuminating Co.* (Mich.) 90 N. W. 1040; *Hite v. Hite,* 93 Ky. 257, 19 L. R. A. 173; 2 Thompson, Corp. § 2040; *Clark Co. v. Winchester & S. T. R. Co.* 19 Ky. Law

Rep. 1435, 43 S. W. 716; Cook, Stock & Stockholders (3d ed.) § 286; *Arkansas Agricultural Soc. v. Eichholts,* 45 Kan. 164, 25 Pac. 613; *St. Croix L. Co. v. Mittlestadt,* 43 Minn. 91, 44 N. W. 1079; 2 Beach, Pr. Corp. § 473; *Gray v. Portland Bank,* 3 Mass. 364, 3 Am. Dec. 156; *Terry v. Eagle Lock Co.* 47 Conn. 141; *Sewall v. Eastern R. Co.* 9 Cush. 5. The plaintiff had the right to maintain this action in equity without applying to the corporation to bring the action, because the action is one in favor of himself, the injury is to him as an individual committed upon him by the corporation. *Doud v. W. P. & S. R. Co.* 65 Wis. 108, 115; *Wood v. U. G. C. B. Asso.* 63 Wis. 9. The court had jurisdiction to render judgment against the defendant *Bolens,* to compel him to transfer to the corporation the patent taken out in his own name. *Valley I. W. Mfg. Co. v. Goodrick,* 103 Wis. 436; *Fuller & Johnson Mfg. Co. v. Bartlett,* 68 Wis. 73. In a suit in equity, where all are parties who can in any way be affected by the judgment, and whose rights can be subserved thereby, the court has the power to render such judgment as the protection of the rights of the various parties requires. *Franey v. Warner,* 96 Wis. 222, 237; *Turner v. Pierce,* 34 Wis. 658; *Winslow v. Crowell,* 32 Wis. 639; *Zimmerman v. Chambers,* 79 Wis. 20, 24.

For the defendants there was a brief, on the plaintiffs' appeal, by *James F. Trottman* and *H. B. Schwinn,* and separate briefs, on the cross appeal of defendant *Bolens* by *James F. Trottman* and *H. B. Schwinn,* attorneys, and *M. M. Riley,* of counsel; and the cause was argued orally by. *Mr. Trottman.* They contended, *inter alia,* that the rule requiring a ratable distribution of *new shares* where the capital is *increased* does not apply to the case where the corporation buys in the shares of its own *original* stock, and holds them as assets, or sells them for the payment of its liabilities or for the general benefit. 2 Thompson, Corp. § 2400; *State ex rel. Page v. Smith,* 48 Vt. 266, 289, 290. Nor does this

rule apply to the case where a part of the original capital stock was not subscribed or issued. *Curry v. Scott,* 54 Pa. St. 270; *State ex rel. Page v. Smith,* 48 Vt. 266; 1 Cook, Corp. § 286. The directors of a corporation have the power, in the ordinary and usual course of business, to dispose of that part of the original capital stock which has not been subscribed, and that power can be nowhere questioned so long as the directors act in good faith with honest motives. *Reese v. Bank,* 31 Pa. St. 78; 2 Thompson, Corp. § 2077, 7 Thompson, Corp. § 8470; *Hunter v. Roberts, Thorp & Co.* 83 Mich. 63, 47 N. W. 131; secs. 1773, 1776, Stats. 1898; *Calteaux v. Mueller,* 102 Wis. 525.

The following opinion was filed March 21, 1903:

Dodge, J. Were *Clarence J. Luther* the sole plaintiff, we should have little doubt that he ought to be dismissed from a court of equity without relief, for the reason that his own conduct has been so in outrage of his duties as a director and officer of the corporation that no court can patiently listen to his prayer for enforcement of fiduciary principles and duties. That objection does not, however, exist to some of the other plaintiffs, who, as stockholders, ask that their rights be protected as to them. The circuit court has found, and we find, nothing of misconduct in their relations to the company.

The salient facts presented by the findings are that the governing board of directors of this corporation were divided into two factions—*C. J. Luther* on the one hand, interested only in the profits which the corporation might make, and to that end interested that it should buy its supplies as cheaply as possible; on the other hand, *T. A. Boerner* and *H. W. Bolens,* largely interested in the company from which supplies were mainly purchased, and therefore anxious to have such purchases continue, and at prices profitable to the seller. Here was presented a question of corporate policy which the stockholders, subject to temporary control by the

directors, had the ultimate right to decide according to majority vote. In that situation, *Bolens* and *Boerner*, availing themselves of the temporary constitution of the board, exercised the power thus vested in them to sell a quantity of unissued stock to a confederate of theirs for the purpose of placing in hands favorable to their policy a majority of the total corporate stock. Such sale is attacked primarily on the ground that, in an already established and going corporation, an increase of capital stock, accomplished either by formal increase of the amount originally authorized or by issue of what had originally been withheld, though within the authorized amount, without first giving opportunity to all existing stockholders to take their proportionate shares of such increase, is wholly beyond the power, not only of the directors, but of any mere majority of stockholders. This doctrine rests on the idea that, while its own corporate stock is property, so that the sale and disposition thereof involve questions of business policy properly controllable by the directors' or stockholders' meeting, the original issue thereof involves something more; that the latter act goes to underlying organization—modifies the fundamental arrangement and proportions of the members. This doctrine is supported by overwhelming and almost unconflicting array of authority, from which we need cite but a few illustrative cases and text book discussions. Cook, Stockholders (3d ed.) §§ 284, 286, 662; 2 Beach, Pr. Corp. §§ 473, 474; 2 Thompson, Comm. Corp. § 2040; Taylor, Pr. Corp. (5th ed.) § 569; *Gray v. Portland Bank*, 3 Mass. 364; *Reese v. Bank of Montgomery Co.* 31 Pa. St. 78; *Electric Co. v. Edison E. I. Co.* 200 Pa. St. 516, 50 Atl. 164; *Jones v. C. & M. Railroad*, 67 N. H. 119, 38 Atl. 120; *Humboldt D. P. Asso. v. Stevens*, 34 Neb. 528, 52 N. W. 568; *Jones v. Morrison*, 31 Minn. 140, 16 N. W. 854; *Dousman v. Wis. & L. S. M. & S. Co.* 40 Wis. 418. It has not yet been decided in this state whether the reasons on which rests this rule of law are sufficient to impose such

limitation upon the powers of directors in our corporations, resting, as they do, upon sec. 1776, Stats. 1898, which provides that "the *stock,* property, affairs and business of every such stock corporation shall be under the care of and be managed by a board of directors," etc. The Minnesota court, in face of a similar statute, has held affirmatively. *Jones v. Morrison, supra.* The question will be worthy of careful consideration when its decision becomes necessary.

For the purposes of the present case, it is not necessary to consider the unissued stock otherwise than as mere property, over which the powers of the directors are the same as over any other assets of the corporation, namely, to sell to whom and at such prices as to them shall seem best for the corporation and all its stockholders, in the honest exercise of the discretion and· trust vested in them. Even then, however, their duties with reference thereto are fiduciary; they are bound to act *uberrima fides* for all stockholders. To dispose of or manage property of the corporation to the end and for the purpose of giving to one part of their *cestuis que trustent* a benefit and advantage over, or at the expense of, another part, is breach of such duty, especially when the directors themselves belong to the specially benefited class. *In re The Taylor Orphan Asylum,* 36 Wis. 534; *Eschweiler v. Stowell,* 78 Wis. 316, 47 N. W. 361; *Spaulding v. North Milwaukee T. S. Co.* 106 Wis. 481, 494, 81 N. W. 1064; *Goodin v. Cincinnati & W. C. Co.* 18 Ohio St. 169; *Farmers' L. & T. Co. v. N. Y. & N. R. Co.* 150 N. Y. 410, 44 N. E. 1043. It cannot matter how this result is accomplished, nor what the form of the undue benefits conferred or acquired. The benefit to the one class or the injury to the other need not be pecuniary. While the ultimate purpose of most stock corporations is money profit, the right of proportionate voice and influence in selection of policy and method of accomplishing that result is most important to each shareholder. It is as fundamental and vital as the right of suffrage under a representa-

tive government. While a governmental act may not take away from any class of citizens property or physical liberty, yet if, contrary to the fundamental law of organization, it abates their suffrage, it would be held void. Each holder of a share of stock has the right that, by convincing the holders of a certain number of other shares, his policy of business be followed. Any invasion of that right is an injury to him which, from his point of view, may be greater than very considerable present money loss to the corporation. While this right must yield to a power over it given by the terms of the association, still he has the right to insist that such power shall be exercised for the purposes of the whole association. It is not so when exercised for the direct purpose of depriving him of his proportionate voice and influence. That is not a legitimate manner for those temporarily vested with power to perpetuate the policy which they favor. Nothing can be more fallacious in corporate or in popular government than the argument that because they honestly believe their policy right, and another dangerous, they may rightfully invade the field of the suffrage upon which policy rests, and disfranchise, in whole or in part, those who disagree with them. We have said this much of perhaps rather trite and elementary philosophy because the conclusions of the trial court seem to rest on the argument that, because the majority of the directors honestly considered *Clarence J. Luther's* control of corporate management dangerous, they might properly exert their power over unissued stock in order to colonize enough new votes to turn the majority supporting *Luther's* policy into a minority.

Since the trial court has found, and upon sufficient evidence, that the purpose of the sale of the new stock was to take from the faction supporting *Luther's* policy the control of the corporation, and to transfer it to the other faction to which the two directors perpetrating the act belonged, as did also the recipient of the stock, we must hold that such sale

was a breach of the duty of the directors, and could confer no rights upon the beneficiary, who knew and participated in the unlawful act and purpose.

That conclusion having been reached, the next question is as to what a court of equity should do in the premises. What form of remedy will accomplish rescission of the unlawful acts, and re-establish the *status quo* disturbed by means thereof? In some cases, where, at the time of decision, the issue and delivery of the stock was not complete, the remedy of declaring void the transaction and enjoining issue has sufficed. *Electric Co. v. Edison E. I. Co.* 200 Pa. St. 516, 50 Atl. 164; *Dousman v. Wis. & L. S. M. & S. Co.* 40 Wis. 418. It is also intimated, though on demurrer, that improperly issued stock may be adjudged canceled and the holder enjoined from voting thereon. *Wood v. Union G. C. B. Asso.* 63 Wis. 9, 22 N. W. 756; *Jones v. Morrison,* 31 Minn. 140, 16 N. W. 854. And finally, it has been held proper to adjudge the cancellation of the unlawful stock, and to enjoin from acting directors and officers who had been elected by voting it. *Humboldt D. P. Asso. v. Stevens,* 34 Neb. 528, 52 N. W. 568; *Reynolds v. Bridenthal,* 57 Neb. 280, 77 N. W. 658. We have not found any case in which a court has gone any further than as above stated.

In the present record we are embarrassed by no circumstances of delay or acquiescence on plaintiffs' part, nor of defendants' change of position in innocent reliance upon the validity of the stock issued. Plaintiffs gave full notice of their objections to the sale of the stock, and commenced this action, asserting its invalidity, and seeking to prevent defendants from recognizing it as giving any voting right to the holder, nearly a month before the stock meeting of November 6, 1899. We deem it clear, therefore, that the decree should declare the invalidity of the thirty-nine shares of stock issued by *Arthur R. Boerner* and adjudge their cancellation, and that upon surrender of the certificates the corporation

repay to him the amount paid for the stock, without interest, less any dividends received by him on that stock; also that the election of directors purporting to have taken place November 6, 1899, be adjudged void, and defendant *Arthur R. Boerner* be enjoined from in any wise claiming or exercising the office of director. Any election to either of the general offices of the corporation made by such illegally chosen board of directors should be adjudged invalid, and the persons so elected, if defendants, should be restrained from claiming or exercising any such office by reason of any such election. This will restore the situation as it existed before the unlawful acts complained of, and a stockholders' meeting can then be held to elect a board of directors. This, as already stated, is going as far as any of the decided cases which have come to our notice, and we think does substantial justice, without the drastic remedy of now endeavoring to install in office those whose claimed election occurred more than three years ago, and whose legal term of office would have expired long since if successors had been elected.

2. Upon defendant *Bolens'* appeal is assigned as error the adjudication that he transfer to the corporation a certain patent. That relief is obtainable, of course, only in an action by the corporation against the individual defendant, to which none of the other parties to this record are either necessary or proper parties, and in which none of them would have any direct interest. True, in case of refusal of the corporation to bring such an action, the present plaintiffs might bring it, but only in the right of the corporation. It would still be an action by it merely forced into court by the individuals in representative capacity. *Land L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964; *Jenkins v. Bradley,* 104 Wis. 540, 551, 80 N. W. 1025; *Boyd v. Mut. Fire Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171. Such an action cannot be joined with one brought by the plaintiffs in their own right to remedy or redress direct wrongs to them. The

two causes of action would not both belong to any one of the classes specified in sec. 2647, Stats. 1898, nor would they both affect all parties to the action, as required by that section. *Spaulding v. North Milwaukee T. S. Co.* 106 Wis. 481, 492, 81 N. W. 1064; *Boyd v. Mut. Fire Asso. supra; Pietsch v. Krause,* 116 Wis. 344, 93 N. W. 9. Hence, if the complaint containing the principal cause of action for cancellation of stock issued in derogation of plaintiffs' rights had also attempted to state a cause for recovery to the corporation of this patent, it would have been obnoxious to demurrer for multifariousness. It, however, contained nothing even suggesting such attempt. It does not declare two separate causes of action, as required by sec. 2647. It refers to *Bolens'* conduct with reference to this and other patents merely as part of the charge of fiduciary misconduct, and the prayer does not hint at any such relief as that granted against *Bolens;* hence there was no opportunity to raise the objection by demurrer.

Plaintiffs, however, urge two rules of practice, both well settled in this court: First, that although the complaint may fail to state a cause of action, nevertheless, if, by evidence permitted by defendant to go in without objection, the cause of action is proved, judgment may properly be rendered thereon, the complaint being amended, or deemed to be, so as to correspond with the proof; secondly, that, unless the objection to a complaint for multifariousness be raised by demurrer or answer, it is waived. Sec. 2654, Stats. 1898. These rules have been adopted to promote justice and to enable full decision of the merits of a controversy after they have been tried by consent of both parties. They are not intended, and will not be perverted, to deprive a defendant of his rightful defenses without his consent or some lapse of reasonable diligence. They proceed on the theory of waiver of the right which every defendant has to be informed intelligibly of the facts which the plaintiff claims to entitle him

to recover, as well as the right to have litigated a cause of action without the trial being complicated by the joinder of an incongruous one.    Like all waiver predicated upon silence, however, there must have been reasonable opportunity, as well as omission, to object.    When evidence is offered which is pertinent to the cause stated in the complaint, it naturally is assumed to be offered in support of the cause of action so stated, and mere omission to object to it cannot, with reason, be ascribed to defendant's willingness that some other and unstated cause of action be tried, to which also that evidence may be competent.    *Mowatt v. Wilkinson,* 110 Wis. 180, 85 N. W. 661.    The same considerations forbid any inference of consent that an incongruous cause of action may be joined, from omission to object by demurrer or answer, when the complaint seeks no such joinder.    It is not until the plaintiff reasonably notifies defendant of his desire to make such joinder, either by offering evidence unambiguously tending to support such additional cause of action or by offer to amend, that the latter can be deemed by silence to consent thereto or waive objection.    Demurrer for multifariousness could not have been sustained to this complaint, for it certainly does not state any separate cause of action for recovery of the patent from defendant *Bolens.*    The duty to object did not arise upon introduction of evidence with reference thereto, for such evidence was admissible, and apparently offered upon the issue as to the relative fidelity, or the reverse, of *Luther* and *Bolens* to the corporate welfare. It is clear that defendant *Bolens* never was so placed that silence on his part could be deemed to waive objection to adjudication in this action of a right of the corporation to enforce the conveyance of this patent to it.    Hence judgment to that effect must be reversed, and also all findings of fact on the issue thereby adjudicated, to the end that no estoppel by *res adjudicata* against either party may rise from this erroneous trial of an issue not presented to the court.

*By the Court.*—Judgment reversed on both appeals, and cause remanded, with directions to enter judgment in accordance with the foregoing opinion.

A motion for a retaxation of costs was denied May 29, 1903, SIEBECKER, J., taking no part.

