REILLY, Appellant, vs. ALLEN-SPIEGEL SHOE MANUFAC-
TURING COMPANY and others, Respondents.

*May 8—June 3, 1924.*

*Corporations: Reorganization: Agreement of creditor to surrender debt for stock in reorganized company: Change in form of new company: Acquiescence by creditor: Restrictions on transfer of stock: Bulk Sales Law: Who may question validity of transfer: Bills and notes: Indorser after maturity: Liability: Appeal: Questions raised by parties not interested.*

1. Where a creditor of a corporation agreed with the promoter of a proposed corporation to accept stock of a reorganized corporation in payment of notes of the old corporation held by him, and acquiesced in a change in the articles of incorporation from that of the promoter's proposal, he cannot urge that such articles did not provide for the character of stock contemplated by the original proposal. p. 263.

2. Where such creditor was not a subscriber for stock of the new corporation within the meaning of sec. 180.06, Stats. 1923, until his contract with the promoter was ratified by the corporation, he cannot urge that he was released from his contract because he was not notified of a preliminary meeting of subscribers to perfect the organization of the new corporation.   p. 263.

3. A restriction in a resolution adopted by subscribers for stock that none of the common stock should be sold to others than holders of preferred stock does not affect the validity of the contract with the promoter under which common stock was issued to the creditor, where all subscribers consented thereto.   p. 264.

4. The obligation to accept stock in the new corporation and pay for the same partly in cash and partly by surrendering a note of the old corporation, is not affected by the fact that the assets of the old company were transferred to the new one in violation of the provisions of the Bulk Sales Law (ch. 241, Stats. 1923).   p. 264.

5. The holder of the note having transferred it to plaintiff, who brought suit thereon, plaintiff cannot challenge a judgment canceling the note and providing that, if judgment against the original holder for his unpaid stock subscription remained unpaid, such holder's stock should be sold, this being a matter in which plaintiff had no interest, and the original owner not appealing.   p. 265.

6. Although notes were transferred after due, the liability of an indorser thereof attaches as between the indorser and his immediate indorsee, and the judgment should be modified to permit the plaintiff to recover on the note against the indorser.   p. 265.

APPEAL from a judgment of the circuit court for Ozaukee county: C. M. DAVISON, Circuit Judge. *Reversed, with instructions.*

In December, 1921, the *Belgium Shoe Company* was in financial difficulties. One *H. C. Labahn* was its president and principal stockholder. At that time he was incarcerated in the Milwaukee house of correction. He held two notes against the *Belgium Shoe Company* aggregating $6,500. The *Shoe Company* also owed a bank $10,000, besides various other debts. Appeal was made to one Ralph A. Spiegel to rescue the company from its financial straits. He pro-

posed to form a new corporation, with a capital stock of
$150,000, $50,000 of which was to be preferred and
$100,000 common stock of the par value of $100. It was
proposed that the new corporation should take over the
assets and liabilities of the *Belgium Shoe Company* and
issue to it new stock of the new corporation equivalent to
fifty per cent. of the preferred stock of the *Belgium Shoe
Company*. This proposition, however, was contingent upon
the indorsees of the note for $10,000 held by the bank
accepting either common or preferred stock in the new cor-
poration as payment of that note by the new company.
Likewise, it was contingent upon the acceptance by *H. C.
Labahn* of the common or preferred stock of the new com-
pany in payment of the $6,500 notes he held against the
*Belgium Shoe Company*. This resulted in an agreement in
writing on the part of *Labahn* in which he agreed to accept
100 shares of the common stock of the new company, and
to pay therefor by canceling his notes for $6,500 held against
the *Belgium Shoe Company,* and paying the balance in cash.

A new corporation was formed in accordance with the
proposition, but the articles of incorporation provided that
the capital stock should consist of 750 shares of common
stock without par value, and 750 shares of preferred stock
of the par value of $100. These articles of incorporation
were signed January 4th and filed with the secretary of state
on January 7th. On the 9th day of January a stockholders'
meeting of the *Belgium Shoe Company* was held for the
purpose of transferring to the new corporation all the assets
and liabilities of the *Belgium Shoe Company*. As *Labahn*
was unable to attend this meeting owing to his incarceration,
he sent his proxy to one John C. Adams to fully represent
him at that meeting. The proper and necessary proceedings
were had at that meeting to transfer to the new corporation
the assets and liabilities of the *Belgium Shoe Company*. The
name of the new corporation was *Allen-Spiegel Shoe Man-
ufacturing Company*. At this meeting of the *Belgium Shoe*

*Company* a resolution was adopted indorsing and ratifying the articles of incorporation of the new corporation so that they provided for 750 shares of common stock without par value and 750 shares of preferred stock of the par value of $100, said Adams, proxy for *Labahn,* voting for said resolution.

Immediately after such action on the part of the *Belgium Shoe Company,* the subscribers of stock, five in number, held a meeting for the purpose of organizing the new corporation. These five subscribers for stock were elected directors, and they subsequently met and completed the organization of the corporation by electing officers, adopting by-laws, etc. At the meeting of the subscribers for stock a resolution was adopted providing that the amount to be paid by the subscribers for the common stock of no par value should be $100 a share until the further action of the board of directors, and that "none of such shares shall be sold to others than to holders of such kind of shares as have been given the opportunity to purchase his proportion of the shares offered for sale, and also his proportion of the shares not taken by the other holders of the said kind of shares."

On the 16th day of January the officers of the corporation issued 100 shares of the non-par value stock to *Labahn,* demanding that he cancel his notes for $6,500 and pay the balance in cash. Another tender was made on February 3, 1922. *Labahn* did not take the stock, saying he wanted to know more about the ability of the men in charge of the new corporation. He made no objections to the change in the character of the capital stock nor to any of the proceedings leading up to the organization of the company. He simply expressed doubt concerning the ability of the men in charge of the new company and expressed a desire to inform himself further with reference to that matter.

Shortly thereafter, and subsequent to the maturity of the notes, *Labahn* sold them to the plaintiff. Soon thereafter

plaintiff commenced this action against the *Allen-Spiegel Shoe Manufacturing Company, Belgium Shoe Company,* and *Herbert C. Labahn,* as indorser of the notes, to recover the amount thereof. The *Allen-Spiegel Shoe Manufacturing Company,* in a cross-complaint against *Herbert C. Labahn,* set up the facts heretofore stated, demanding that the complaint of the plaintiff be dismissed as to it, and that judgment be entered in favor of the *Allen-Spiegel Shoe Manufacturing Company* and against the defendant *Labahn* commanding the said *Labahn* to cancel and deliver up said promissory notes to the *Allen-Spiegel Shoe Manufacturing Company,* and that, in the event said notes cannot be delivered and canceled, then for judgment against said *Labahn* in the sum of $10,000. In answer to the cross-complaint *Labahn* alleged that at the time of his agreement to take stock to the amount of $10,000 in the new corporation it was agreed between himself, Spiegel, and two others that they would each take $10,000 worth of said stock of the new corporation so that control of the stock of the corporation could not be held by any two of them, which agreement induced him to subscribe for said $10,000 worth of stock and pay for the same by surrendering said notes for $6,500 and the balance in cash; that at the time the stock was tendered to him, on the 16th day of January, 1922, he had learned that Spiegel and one E. W. Allen, who was a party to the agreement, had secured control of the corporation by subscribing for fifty-one per cent. of the common stock and had voted themselves excessive salaries; that upon learning this he refused to carry out his agreement to take $10,000 worth of the stock of the new corporation, and sold and assigned his notes to the plaintiff. He also alleges that there was an absolute failure of consideration for his agreement to take said $10,000 worth of stock.

There was a trial by the court, resulting in a judgment dismissing the complaint as to the *Allen-Spiegel Shoe Manufacturing Company,* canceling the notes, entering judgment

against *Herbert C. Labahn* for $3,500, and providing that, if said judgment remains unpaid for thirty days after notice of entry of judgment has been duly served on the attorney for *Labahn,* the certificate of stock for 100 shares issued to *Labahn* and deposited with the clerk of the court be sold in such manner and under such condition as the court shall then direct, to pay said judgment. From the judgment so entered the plaintiff appealed.

For the appellant there was a brief by *Timlin & Dean* of Milwaukee, and oral argument by *P. W. Dean.*

For the respondent *Allen-Spiegel Shoe Manufacturing Company* there was a brief by *W. F. Schanen* of Port Washington and *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *M. L. Lueck.*

OWEN, J.    The most substantial proposition pressed upon this court by the appellant for a reversal of the judgment is the fact that the articles of incorporation did not provide for the character of capital stock contemplated by the proposal which Spiegel made to the *Belgium Shoe Company* and the agreement of *Labahn* to take $10,000 of the common stock of said proposed corporation. It will be borne in mind that the initial proposal was to form a corporation with a capital stock of $150,000, $50,000 of which was to be common and $100,000 preferred. The articles of incorporation provided for 750 shares of common stock of no par value and 750 shares of preferred stock of the par value of $100 per share. However, we do not deem it necessary to consider whether this change was of such a fundamental character as to relieve *Labahn* from his agreement to take 100 shares, as the court found upon ample evidence that *Labahn* was advised of the change before the articles of incorporation were executed or filed, and consented thereto.

The evidence shows that Spiegel frequently interviewed *Labahn* prior to the filing of the articles; that he kept him advised concerning the progress of events; and that *Labahn*

knew of this change in the articles of incorporation. Furthermore, this change in the articles of incorporation from that contained in Spiegel's proposal was ratified by a resolution of the stockholders of the *Belgium Shoe Company,* in which *Labahn* was represented by his proxy. The court found that that resolution could not have been adopted except by a vote of *Labahn's* proxy at that meeting. Had it not been adopted, it is quite likely that the entire scheme for rescuing the *Belgium Shoe Company* from its financial situation would have fallen through. At no time did *Labahn* offer any objection to this change. He did not assign it as a reason for refusing to carry out his agreement, nor did he set it up in his answer as a defense to the cross-complaint of the *Allen-Spiegel Shoe Manufacturing Company.* All of these circumstances confirm the conclusion of the trial court that *Labahn* knew of and consented to such change, and that, if he did not, he at least acquiesced therein, and plaintiff is in no position to urge that circumstance before this court as a ground for a reversal of the judgment.

It is next urged by appellant that *Labahn* was released from his contract because he was not notified of the preliminary meeting of the subscribers of the common stock to perfect the organization of the corporation. This contention is without substance, for the reason that *Labahn* was not a subscriber of the stock of the corporation within the contemplation of sec. 180.06, Stats. 1923. His contract was with the promoter. It might or might not be ratified by the corporation. It is such contract as was under consideration in *Samuel Meyers, Inc. v. Ogden Shoe Co.* 173 Wis. 317, 181 N. W. 306. It was an entire contract and contemplated payment for the stock by cancellation of his notes against the *Belgium Shoe Company.* This was a matter upon which the corporation could not be bound by the contract of the promoter. *Labahn* could not compel the issuance of the stock to him unless the company agreed to accept payment in the manner provided. At the time of the meeting of sub-

scribers of stock, therefore, *Labahn* was in no manner related to the corporation, and never would be unless the corporation ratified the contract between *Labahn* and Spiegel. Consequently it was not necessary that he have notice of the meeting of the subscribers to the capital stock.

It is also contended that the restriction placed upon the sale of the common stock by virtue of the resolution set forth in the statement of facts, adopted at the preliminary meeting of subscribers for stock, placed it beyond the power of the corporation to issue this stock to *Labahn*. Whatever rights this resolution secured to the then stockholders, they were rights which they could waive. 1 Cook, Corp. § 286. These subscribers of stock were all elected directors of the corporation. After their election as directors this stock was issued, presumably with full corporate authority and with the acquiescence of all the stockholders, protected by the resolution referred to. If they had not consented to the issuance of the stock when tendered, they certainly are now estopped from questioning the power of the corporation to issue it. Since the directors have charge of the defense of this action, they are here ratifying what the officers of the corporation did in the manner of issuing and tendering the stock to *Labahn* and are accepting the benefits of the judgment entered by the lower court. Furthermore, it is not certain that *Labahn's* title to this stock would be affected by the resolution referred to unless the stock was issued for an ulterior purpose and he was a party to the fraud. See *Dousman v. Wis. & L. S. M. & S. Co.* 40 Wis. 418; *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69; 1 Cook, Corp. § 286. We can discover no substance to this contention.

It is further contended that the assets of the *Belgium Shoe Company* were transferred to the new corporation in violation of the Bulk Sales Act. We can discover nothing in that circumstance that in any way affects the validity of *Labahn's* contract here under consideration. If a creditor

of the *Belgium Shoe Company* might take advantage of that circumstance, it certainly does not in any manner affect *Labahn's* obligation.

It is further urged that the trial court had no authority to provide for a sale of *Labahn's* stock in case the judgment for $3,500 rendered against him was not paid within thirty days. This is a matter in which appellant has no interest whatever. *Labahn* has not appealed, and there is no one here authorized to challenge the propriety of that feature of the judgment.

It is further claimed that the court erred in not rendering judgment in favor of the plaintiff and against *Labahn* upon his liability as indorser of the note. The failure of the judgment so to provide must have been the result of an oversight. Although the notes were transferred after due, nevertheless the liability of an indorser of negotiable paper attaches as between the indorser and his immediate indorsee. 1 Daniel, Neg. Inst. (6th ed.) § 664.

We cannot modify the judgment in this respect because we are not in a position to compute the amount due on the notes. It will therefore be necessary to reverse the judgment, and remand the case with instructions to enter a new judgment in conformity with the present judgment, and, in addition thereto, allow a recovery by the plaintiff against *Labahn* for the amount due on the notes.

*By the Court.*—So ordered. *Allen-Spiegel Shoe Manufacturing Company* to recover costs. No other costs to be taxed.