WILLIAM WILCOX & another *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FAIRHAVEN BANK & another.

A creditor who holds security, without special stipulations for its application, for various notes due from his debtor, some of which bear the names of sureties, may, in case of the insolvency of the principal debtor and of some of the sureties, apply the same towards the payment of such of the notes as may be necessary for his own protection; and solvent sureties upon other of the notes cannot avail themselves thereof in any way, in equity, without paying or offering to pay the whole of the notes for which the security was given.

BILL IN EQUITY by sureties upon notes given by Reuben Fish to the Fairhaven Bank, seeking to compel the latter to apply the avails of certain securities held by them from Fish *pro rata* upon the notes signed by the plaintiffs. The case was reserved for the determination of the whole court by *Dewey*, J., upon facts which sufficiently appear in the opinion.

*O. Prescott,* for the plaintiffs. The bank held the security as trustee for all of the indebtedness equally; and had no right to apply it by way of preference to any one note or class of notes. *Eastman* v. *Foster,* 8 Met. 19. *Crane* v. *March,* 4 Pick. 131. All of the sureties were equitable *cestuis que trust,* and they are entitled to have the property applied to their relief *pro rata.*

*J. C. Stone,* (*W. W. Crapo* with him,) for the defendants, cited 2 White & Tudor's Lead. Cas. in Eq. (3d Amer. ed.) 226, and cases there cited; *Richardson* v. *Washington Bank,* 3 Met. 536; *Wiggin* v. *Dorr,* 3 Sumner, 410.

MERRICK, J. From the undisputed allegations in the bill and answer, it appears that on the first day of December 1857 Reuben Fish conveyed to the defendants certain personal property, to be held by them as security for the payment of the several promissory notes and drafts for which he was then, or within two years thereafter might become, liable to them, either as promisor, acceptor, drawer or indorser. That this was the object and purpose of the conveyance is expressly stated and declared in the bond *

---

* The condition of this bond, after reciting that Fish was liable to the bank on sundry notes and drafts, and desired future accommodation from the bank,

which was at the same time given by them and accepted by him, by the terms of which they obligated themselves to reconvey the property to him whenever he should pay all such notes and drafts, or cause them to be fully paid and discharged. From all the property conveyed to them the defendants have since realized in money the sum of $2936.12; and nothing further is expected or can be obtained from it. They claim the right to appropriate the whole of this sum to their own use, by applying $1220.79 in payment of sundry notes made by said Fish and discounted by them between December 1st 1857 and November 7th 1859, for the payment of which they had no security other than the property mortgaged to them as before mentioned, and by applying the balance, to wit, $1715.33, towards the payment of sundry other notes of said Fish due to them, part of which were indorsed by Holmes & Co., and the residue of them by James K. Turner. It is conceded that when these notes became due the said Fish, Holmes & Co. and Turner were, and that they still are, insolvent.

It is claimed by the plaintiffs, on the contrary, that the said conveyance of the said property to the defendants created a trust in favor of all the sureties and indorsers upon the several notes of said Fish discounted and owned by them; and that these sureties and indorsers, being equitable *cestuis que trust*, are entitled to have the proceeds of said property applied to their relief *pro rata.* And in support of this claim they cite and rely upon the decisions of this court in the cases of *Eastman* v. *Foster*, 8 Met. 19, and *Rice* v. *Dewey*, 13 Gray, 47. The broad principle of equity affirmed in those cases, and upon which they were determined, is, that a mortgage made by a debtor to his

---

and had conveyed to them certain property " to be held as security for the payment of said notes and drafts now held by the bank, and on which said Fish is liable, as above stated; and also as security for the payment of all notes and drafts on which said Fish may become liable to said bank at any time within two years," &c., provided that if he should pay all of the same, and if thereupon the bank should reconvey the property to him or his assigns, then the bond should be void. An additional clause gave to the bank authority to sell the property in case of default in the payment of any of the notes or drafts.

surety, to secure the payment of certain debts for which the latter is liable, and to indemnify him therefrom, is not to be regarded simply as an indemnity to him, but that the estate of the mortgagor is to be treated as a security for the debt, of which the creditor may avail himself; or, if there be several debts, of which the several creditors may avail themselves in proportion to the amount of their respective claims. These cases thus show how property mortgaged to a surety may be reached and appropriated by the creditor or creditors to the payment of the debts severally due to him or them; but they do not show, nor was it therein determined, that a creditor holds the proceeds of property, mortgaged to him to secure the payment of several notes due to him, as trustee for the several sureties thereon in proportion to the amount of their respective liabilities, unless these liabilities have been discharged by the payment of all the debts for which they were thus severally bound. Those decisions are therefore manifestly not strictly applicable to the facts of the present case.

It is, however, undoubtedly an established rule of equity that a surety who has paid the debt of his principal, either voluntarily or by compulsion, is entitled for his indemnity to any property pledged or collateral security given therefor by the principal to the creditor. But as this rule is founded on the principles of reason and justice, and not upon any contract or stipulation to that effect between the parties, it follows as a necessary consequence that a surety is not to be substituted in the place of the creditor, unless from the circumstances of the case it is shown that it is just and reasonable that he should be. Hence it is obvious that, in order to become entitled to such substitution, he must first pay the whole of the debt or debts for which the property is mortgaged or the collateral security is given to the creditor; for it would be manifestly unjust, and a plain violation of his rights, to compel him to relinquish any portion of the property before the obligation for the performance of which it was conveyed to him as security had been fully kept and complied with. *Richardson* v. *Washington Bank,* 3 Met. 536. *Copis* v. *Middleton,* 1 Turn. & Russ. 224. *Hodgson* v. *Shaw,* 3 Myl. & K. 183.

Such previous payment by the surety is alike essential where there is only one debt and one surety, and where there are many debts all of which are equally protected and secured by the property mortgaged, and many several sureties of the several debts; for the chief and primary object of a pledge or mortgage to a creditor is his benefit, protection and advantage in reference to each and all of the several debts which it was made or given to secure. And until this object is fully accomplished, no surety can justly or lawfully interfere to disturb him in the possession of the property pledged, or hinder him from appropriating the proceeds of it towards payment of any such debt which he cannot otherwise collect or render available. And if there be one or more debts thus secured for which the debtor alone is responsible, and the amount of which cannot be obtained from him on account of his insolvency or pecuniary inability, such proceeds may be applied, as far as is necessary for that purpose, to the payment and discharge of such debts, and to that extent the sureties upon notes constituting other debts can have no interest in or right to the mortgaged property. But the several sureties, or any one of them, may, if they choose to do so, pay all the debts secured by the mortgage, and then be, or they will be entitled to be, substituted and stand in the place of the creditor. If the payment be made by one of them only, he will hold the property, subject to the rights of the others to come in and pay the amount of their respective liabilities, for his own indemnity; if it be made by all of them, the payment will operate as a redemption of the property for their common benefit, and the proceeds of it will be held to be distributed among them in proportion to the amount of their respective liabilities. But until the whole of the debts due to the creditor and secured by the mortgage are paid or offered to be paid to him by all or by some one of the sureties, he has an undoubted right to the possession and control of the mortgaged property, and no proceedings can be had against him in reference to its disposal or appropriation.

In the application of these principles to the facts disclosed in the present case, it is a necessary consequence that this bill cannot be maintained. The plaintiffs have not paid, nor have they

in their bill offered to pay, the whole or any part of the debts secured by the mortgage. They do not, therefore, show that they have any right of substitution, or that they are entitled to any relief. But the result is the same upon another distinct ground. The defendants have a right to appropriate the whole proceeds of the mortgaged property to the payment of the notes of Fish upon which he alone was liable, and of those other notes made by him upon which Holmes & Co. and Turner were respectively sureties, because by reason of the insolvency of all these parties nothing can be collected of them, and otherwise these notes would remain wholly unpaid. There is, therefore, nothing left for the sureties to redeem, or in respect to which a substitution in the place of the creditor would avail them anything. The bill must accordingly be dismissed.

