[Perry v. Tuskaloosa Cotton Seed Oil Mill Company.]

# Perry *v.* Tuskaloosa Cotton Seed Oil Mill Company.

*Bill in Equity by Stockholder, against Corporation and Directors.*

1. *Equitable relief to stockholder, against corporation and officers.*—Redress for wrongs against a corporation must, as a general rule, be sought by the corporation itself in its own name; but a stockholder may maintain a bill in equity against the corporation and its directors, for the redress of wrongs perpetrated in the corporate name, on averment and proof that he has made unsuccessful application to the board of directors, or other governing body, and that a majority of the directors are personally implicated or interested in the illegal acts of which he complains.

2. *Contract of officer or agent of corporation, for personal benefit.*—The general manager, superintendent, director, or other officer or agent of a corporation, charged with the duty of furnishing or procuring materials or work for it, and making over-charges, or stipulating for a *bonus* or personal profit to himself in his contracts with other persons, is guilty of a breach of trust, and is liable to account to the corporation for the profits realized.

3. *Director or stockholder voting by proxy.*—A stockholder in a corporation can not vote by proxy, unless authorized by the charter, or by-laws; and *a fortiori* a director can not, since the corporation is entitled to the influence, judgment and vote of each director.

4. *Fraudulent contract of director.*—The general manager of a corporation, or a director or other officer, can not obtain any advantage over it through his position, or the information he has obtained of its affairs, or his influence over other directors; and if he takes advantage of his position and influence to procure the allowance of an account in his own favor, without being audited or examined, or an account in favor of a third person in which he is personally interested, he is guilty of a fraudulent abuse of trust, and liable personally as trustee.

5. *Sale of shares of stock at less than par value.*—An original issue of shares of stock in a corporation as paid up, at less than their nominal value, is in violation of law, and against public policy; and independent of this rule, a sale and original issue of shares on credit, at one half of their par value, is violative of constitutional provisions.

6. *Employment of attorneys by or for corporation.*—The employment of attorneys for a corporation, to institute or defend suits for it, and to manage its legal business, is within the implied authority of the board of directors; and a court of equity will not interfere with their action in this matter, at the instance of a stockholder, on general allegations that the attorneys were not employed in good faith to protect the interests of the corporation, but to enable the directors to resist his efforts to redress the wrongs done by them in the corporate name, against which he seeks equitable relief.

7. *Election of directors; when equity will inquire into.*—A court of equity will not primarily take jurisdiction to determine the legality of an election of directors of a corporation, or to remove a director

[Perry v. Tuskaloosa Cotton Seed Oil Mill Company.|

who is in possession of the office, but will inquire into the regularity of the election, or the right of the person to the office, *only* when the question arises incidentally and collaterally in a suit of which the court has rightful jurisdiction, and the grant of relief depends on its decision.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 12th February, 1890, by Mrs. Medora Perry, the widow of W. H. Perry, both individually and as the personal representative of his estate, in behalf of herself and other stockholders of the Tuskaloosa Cotton Seed Oil Mill Company, a private corporation; against said corporation, D. H. Carswell, its president and general manager, E. B. Nuzum, W. L. Herblin and L. B. Herblin as directors, and Callahan & Co., a partnership engaged in business in Dayton, Ohio, claiming to be stockholders. The bill prayed relief as follows: (1.) To set aside the issue of ninety (90) shares of stock in the corporation to said Carswell, which was made by the board of directors on the 1st May, 1888, in payment and satisfaction of an alleged indebtedness by the corporation to him; and to compel an accounting between him and the corporation as to all matters in which he represented the corporation, and in which, as alleged, he held an adverse personal interest, and had been guilty of fraudulent practices. (2.) To set aside the issue of fifty shares of stock to Callahan & Co., which was made by the order of the board of directors on the 1st May, 1888, in payment of an alleged indebtedness to them by the corporation, on the ground that the transaction was fraudulently procured by said Carswell, and that he had a personal interest in the allowance of the account. (3.) To set aside the issue of twenty-five shares of stock to said L. B. Herblin, which was done by order of the board of directors on the 15th June, 1888, at one half of their par value. (4.) To set aside an order made by the board of directors on the 11th June, 1888, appointing attorneys and solicitors for the corporation at an annual salary, and have an account stated of the sums paid to the said solicitors, the services rendered by them, &c. (5.) To have an account stated of the moneys paid out of the funds of the corporation in former litigation with the complainant, and to have the same declared and enforced as a lien on the shares of stock held by Carswell. (6.) To have an allowance made to the complainant for her reasonable attorney's fees and other expenses in the prosecution of this suit. (7.) To set aside an election of directors made on September 7th and 9th, 1888. (8.) To set aside an order made by the board of directors, or persons assuming to act as direc-

[Perry v. Tuskaloosa Cotton Seed Oil Mill Company.]

tors, allowing salaries to said Carswell, Nuzum, W. L. Herblin, and L. B. Herblin, and to have an account stated against each one of them, charging him with all moneys received under this order. (9.) For general relief.

The defendants filed a joint demurrer to the bill, assigning twelve grounds or causes of demurrer, of which the court sustained the following: (1.) "Because the bill fails to show a single act of fraud, or of bad faith, on the part of the governing body of the corporation, but shows by the attached exhibits that all the proceedings of said governing body have been regular." (2.) "Because the bill seeks to annul a regular election of a board of directors of said corporation, and to cause a new board to be elected under the direction and control of the Chancery Court, when, in point of fact, the exhibits attached show that all the stock was represented but ten shares at the meeting of the stockholders at which said board was elected, and the bill of complaint shows that the board of directors was regularly elected, and that respondents aided in electing complainant a member of said board; and said bill shows that complainant was present at the last two meetings of the stockholders of said company, and represented a large number of shares of stock, and that no vote was cast for any other than the members of the board who were elected." (7.) "To that portion of the bill which denies the right of the corporation to employ attorneys to defend suits brought against the company, and to act as regularly retained attorneys of the corporation, because this is not only the right, but is the custom, if not the duty, of all corporations of this character." (9.) "To that portion of the bill of complaint, and the prayers based upon it, which ask that the attorney's fees of complainant be paid which were incurred in suits against the company, because this litigation was in direct hostility to the company and its best interest." (10.) "To that portion of the bill of complaint which asks that an account be stated between the individual respondents and the company, because no grounds for the statement of such accounts have been shown; and the individual respondents demur to that portion which asks that a lien be declared and fixed upon their stock for any balance that may be found against them upon the statement of account, because the Chancery Court has no such power."

The decree on the demurrer is here assigned as error.

HARGROVE & VAN DE GRAAFF, for appellants, cited the following authorities: (1.) As to the first assignment of error:—1 Mor. Corp., §§ 245, 249, 274, 286, 289, 509, 522; Cook on Stock, &c., § 652; *Cook v. Sherman*, 20 Fed. Rep. 167, note; *Roll-*

[Perry v. Tuskaloosa Cotton Seed Oil Mill Company.]

*ing-stock Co. v. Railroad Co.*, 34 Ohio St. 450; *Railroad Co. v. Woods*, 88 Ala. 642; *Metropolitan Railway Co. v. Manhattan Co.*, 15 A. & E. R. R. Cases; *Fitzpatrick v. Dispatch Publishing Co.*, 83 Ala. 604; *Williams v. Evans*, 87 Ala. 725; *Tutwiler v. Tusk. Coal, Iron & Land Company*, 89 Ala. 399; *Meeker v. Winthrop Iron Co.*, 17 Fed. Rep. 48; *Thomas v. Railroad Co.*, 109 U. S. 522; *Wardell v. Union Pacific Railroad Co.*, 103 U. S. 651; 18 Ohio St. 182; 54 Barb. 42; 13 Fed. Rep. 20, 577; 27 Fed. Rep. 625; 79 Penn. St. 168, 204. (2.) As to the second ground of demurrer: 1 Mor. Corp., §§ 255, 281; Cook on Stock, &c., § 652; *Atwood v. Merriweather*, L. R. 5, Eq. 464; *Thomas v. Railroad Co.*, 109 U. S. 522; 2 Fed. Rep. 877. (3.) As to the seventh ground of demurrer: 1 Mor. Corp., §§ 517–18; *Railroad Co. v. Woods*, 88 Ala. 641. (4.) As to the ninth ground of demurrer: Mor. Corp., 271: 17 Fed. Rep. 48. (5.) As to the tenth ground of demurrer: 31 Amer. Rep. 62; 53 Cal. 466; 1 Mor. Corp., §§ 525–6; 20 Fed. Rep. 180; 3 Fed. Rep. 817.

MARTIN & McEACHIN, *contra.*—"The appellees submit their case upon the following fundamental propositions: (1.) The sale of the stock to Carswell, at its par value, in payment of the company's indebtedness to him, was authorized by section 4 of said company's by-laws, and was a lawful act. (2.) 'Interest is the legitimate fruit of principal,' and, unless otherwise stipulated by the parties to the contract, accrues lawfully upon a claim from and after its maturity. (3.) After a claim has been audited and paid by order of the board of directors, the presumption of its correctness, and of good faith on the part of the directors in so ordering and paying it, must be overcome by him assailing it. (4.) The matters complained of must be stated with such definiteness and particularity that the defendant may be enabled to make his defense; generally, statements charging fraud, bad faith and corruption on the part of officials, without specifying when, or where, or in what particular, may be reached by demurrer. (5.) The bill fails to state that the stock sold to L. B. Herblin was stock which had not been paid for and issued, but remained in the corporation to be issued. If said stock had been paid for in full by the original subscribers for same, and had been re-acquired by the corporation, then the sale of the 25 shares to said Herblin for $1,250 was not violative of any constitutional or statutory provision. The board of directors were intrusted and charged by the company's by-laws with the performance of a duty; and where they have performed it, or attempted to perform it, and where there is a legal and an illegal method

·of performing such duty, the presumption will obtain, that their act was legal; and this presumption must be overcome by him assailing it. (6.) The right, duty and necessity for the employment of legal counsel was left by the by-laws with the board of directors, and the employment of counsel by them is, presumptively, a correct and *bona fide* action on their part." They cited *Flewellen v. Crane*, 58 Ala. 627; *Davis v. Furnace & Chemical Co.*, 8 So. Rep. 496; *Foss v. Harbottle*, 2 Hare, 461; 1 Mor. Corp., § 246.

CLOPTON, J.—The Tuskaloosa Cotton Seed Oil Mill Company was incorporated April 21, 1883, under the general laws providing for the formation of manufacturing corporations. W. H. Perry, the intestate of appellant, who was an original subscriber for fifty shares of the capital stock, was elected president, and D. H. Carswell, superintendent and general manager, at the organization of the company. They continued to act in such capacities until the death of Perry in November, 1885; and after his death Carswell was elected, and has been ever since president of the company. Mrs. Perry brings the bill individually, and as administratrix of her husband, on behalf of herself and other stockholders who may make themselves parties, against the corporation, Carswell, Callahan & Co., and others. The main purposes of the bill are to annul and cancel certain shares of the stock issued to Carswell and Callahan & Co., to set aside an election of directors, and to hold Carswell to an accounting for overcharges against the company, and for alleged profits realized by him individually from transactions in which he represented the corporation. The other objects of the bill it is unnecessary to state now. The appeal is taken from the decree of the chancellor sustaining five of the twelve grounds of demurrer interposed by defendants.

The averments of the bill show that a demand or appeal to the managing body, or to the shareholders, for remedial action, was a useless ceremony, and bring the case within the exception to the general rule, requiring redress for wrongs against a corporation to be sought by the corporation itself in its own name. It alleges, that three out of the four members of the directory, of whom Carswell is one, and the majority of those holding the issued and outstanding stock, are guilty of the wrongs complained of, and that the corporation can not be safely left to obtain redress through their agency. It further avers, that complainant made an honest and earnest effort with the managing body to secure action, by addressing to the president and board of directors three several letters pro-

[Perry v. Tuskaloosa Cotton Seed Oil Mill Company.]

testing against the issue of the stock to Carswell and Callahan & Co., as illegal and based upon claims fictitiously increased, and requesting that the issue be cancelled and suit brought in the name of the company for that purpose, offering to furnish memoranda of the facts upon which to base the suit. These letters were laid before the board at a meeting of the directors, but they have failed or refused to take any action. Also, at two successive meetings of the stockholders, complainant protested against the issue of the stock, and against the holders being allowed to vote the same, but her protests were disregarded, and a resolution adopted to the effect that her complaint was unfounded and her request be denied. The averments of the bill show that complainant has exhausted all means within her reach "to obtain, within the corporation, redress of her grievances, or action in conformity to her wishes."

The first ground of demurrer, which goes to the entire bill, is, that it "fails to show a single act of fraud or of bad faith on the part of the governing body of the corporation, but shows, by the attached exhibits, that all the proceedings of said governing body have been regular;" and the tenth ground of demurrer, which goes only to that part of the bill asking for an accounting between the individual defendants and the corporation, is, that "no grounds for the statements of such accounts have been shown."

Pretermitting consideration whether the grounds of demurrer are specially set forth in the manner required by the statute, we will proceed to consider them on their merits; and in doing so, must necessarily state the salient facts to which they relate as alleged in the bill, omitting notice of the antecedent and incidental facts and circumstances leading to the commission of the grievances complained of. Assuming the truth of the averments, the facts are these : Carswell, who was engaged in the business of manufacturing engines and machinery, and as contractor in putting up and equipping oil mills, brought about the formation of the company for the purpose of securing the contract to build and equip the mill. While holding the office of director and general superintendent, he made a contract with the company for the construction of its plant, and built and equipped the mill. A copy of the contract, if in writing, has not been preserved among the papers of the company, and its particular provisions are unknown to the complainant; but she charges that Carswell used his superior knowledge, and abused the confidence of his associates, to make the performance of the contract highly profitable to himself, by charging the company

for the machinery furnished and the work done prices largely in excess of the reasonable value. With what officer or agent of the company the contract was made is not stated, nor does it appear whether any price was stipulated to be paid for the entire erection and equipment of the mill. It may be conceded that the averments in respect to these matters do not sufficiently show fraud or over-reaching; but their materiality becomes manifest when considered in connection with the averments as to the issue of the stock which complainant seeks to have set aside, hereafter noticed.

The bill further avers that, after the completion of the mill, Carswell, as superintendent, contracted on behalf of the company with himself for repairs and betterments at prices greatly above the fair market value of the materials provided and work done; and in contracting with Callahan & Co., of whom he made large purchases for the mill, he contracted to retain for himself a discount or profit upon the contract price charged against the company. If these averments be true, they make a case of breach of trust by a director, of disregard and violation of the obligations and duties of a superintendent and general manager, and of a director and superintendent representing the corporation in transactions, for his private advantage. No rule is better settled, or upheld by courts of equity with a steadier hand, than that which disqualifies an agent to represent his principal in any transaction in which he has opposing personal interests. It appears in all transactions in which the agent is subject to temptation to use his relation and authority for his private and individual benefit, to the prejudice and injury of his principal. Accordingly, a director, or other officer or agent of a corporation, can not represent it in any matter or business, in which he has an individual pecuniary interest. It has been uniformly decided that a director, superintendent, or agent of a corporation, has no right or authority to stipulate for a commission or *bonus* to be paid him by a person with whom he enters into a contract on behalf of the corporation.—Cook on Stock and Stockholders, § 649; 1 Morawetz on Cor., § 518. If Carswell individually furnished materials and did work for repairs, overcharging, or if by any arrangement with Callahan & Co. he secured to himself a share in the profits of the purchases made of them, he is liable to account to the corporation therefor.

As to the issue of the shares of stock to Carswell and Callahan & Co., the allegations of the bill are as follows: Carswell, who resided in Nashville, Tennessee, having learned that complainant had purchased enough shares to give her the ma-

[Perry v. Tuskaloosa Cotton Seed Oil Mill Company.]

jority of the stock then issued, proceeded to Tuskaloosa, and convened a board of directors May 1, 1888, for the avowed purpose of circumventing her. At this meeting he procured ninety shares to be issued to him, and fifty to Callahan & Co., professedly in payment of their respective accounts against the company, for the purpose of retaining to himself the control, and depriving complainant of the advantage she had gained by securing a majority of the outstanding stock with the view of calling him to account in a suit by the corporation. A copy of Carswell's account, as it appears on the books of the company, is made an exhibit to the bill. It alleges that the overcharges for materials furnished and work done entered into this account, and that the company was not allowed credit for the commissions or profits he received from Callahan & Co.; that unauthorized, illegal and excessive interest, amounting to three thousand dollars, was charged against the company, and on a just and equitable statement of the account Carswell will be indebted to the company. The bill also avers that he has paid, or agreed to pay or secure to Callahan & Co., the amount of their account, less the sums allowed him as commissions, on condition they would hold the shares issued to them for his benefit, and subject to his order. It seems that both accounts were received and ordered to be paid without being audited, or any inquiry or investigation as to correctness. At this meeting of the board, there were three directors present, Carswell, Nuzum and W. L. Herblin, the last two, as the bill avers, instruments of Carswell, Huzum holding one share, which was sold to him when elected secretary and treasurer, and Herblin one share, which was sold to him when he was elected director. It further appears from the minutes of the meeting that the only other director was represented by proxy, which was not authorized by the by-laws, or the general laws. Even a stockholder can not vote by proxy, unless the right is conferred by charter or by by-laws; a *fortiori*, a director can not; the company is entitled to the influence, judgment and vote of each director. 1 Mor. on Cor., § 486. If these allegations be true, it is too plain for argument that Carswell absolutely controlled the action of the board, and procured by his influence and power the issue of the stock to himself, under pretense of paying an unjust claim of large amount; and also the issue to Callahan & Co., for his personal benefit and advantage. Such a transaction will be closely scrutinized by the court, and set aside upon any unfairness being shown. "A director will not be allowed to obtain any advantage over the corporation of which he is agent, through his position, or the information which he

has obtained of the affairs of , the corporation, or his influence over his co-directors."—1 Mor. on Cor., § 527.

Furthermore, it appears from the minutes of a meeting of the board, held June 15, 1888, that the defendant L. B. Herblin was elected night superintendent of machinery and labor, and thereupon, by order of the board, twenty-eight shares of the par value of one hundred dollars each of the capital stock were sold to him for twelve hundred and fifty dollars. The bill avers that for this sum he gave his note, the whole or much greater part of which is unpaid, and that he is a young man without other means than his earnings. This, it seems from all the averments of the bill as to the stock issued, was stock which had never been previously issued. The general rule, as has been said, is, that an original issue of shares in a corporation as paid up at less than their nominal value, is in violation of law, and against public policy. To this rule there may be exceptions ; but independent of this rule, a sale and original issue of shares at less than one half of their par value on a credit is, according to the principle settled by several decisions of this court, in violation of section 6 of Article XIV of the Constitution.—*Parsons v. Joseph*, 92 Ala. 403 ; *Fitzpatrick v. Dispatch Pub. Co.*, 83 Ala. 604.

The foregoing allegations of the bill, considered collectively, show acts of bad faith on the part of the directors, a fraudulent abuse of their trust, for which they are personably liable as trustees.—*Smith v. Poor*, 40 Me. 415 ; s. c., 63 Am. De. 672.

Courts of equity will not interfere, no fraud intervening, with the internal policy of a corporation, when the acts are *intra vires*, at the instance of a stockholder, or with the management of the directors in respect to matters within the scope of their authority and resting in their discretion and judgment. All questions of expediency and economy, within the limits of their powers, must be left to the free exercise of their judgment. The employment of attorneys to institute or defend suits, and to manage the legal business of the corporation, is within their implied authority. While the bill alleges as the conclusions of complainant, that the employment of attorneys was not in good faith and to protect the interests of the company, but to resist any effort on her part to redress the wrongs alleged to have been committed, the facts, so far as any are alleged, are insufficient to support these conclusions. A general averment, without the facts, is insufficient.—*Crane v. Flewellen*, 58 Ala. 627.

The remaining ground of demurrer goes to that part of the bill which seeks to declare null and void the election of the directors, and to order a new election. A court of equity will

[Moncrief v. Wilkinson.]

not primarily take jurisdiction to determine the legality of an election of directors, or to remove a director who is in possession of the office. The court will inquire into the regularity of the election, or the right of the person to the office, only when the question arises incidentally and collaterally in a suit of which the court has rightful jurisdiction, and the grant of the relief depends upon its decision.—*Nathan v. Tompkins* 82 Ala. 437. It does not appear that its decision is necessary to grant relief to complainant.

We have considered all the grounds of demurrer as to which the rulings of the Chancellor are assigned as error ; and in doing so, have assumed the truth of the averments of the bill. It follows from the foregoing principles, that the first and tenth grounds should have been overruled. There is no error in sustaining the second, seventh and ninth. In sustaining the ninth ground of demurrer, we do not intend to decide, that complainant will not be entitled to an allowance for attorney's fees in this suit, if successful.

Reversed and remanded.