GEORGE R. SCHMIDT, Appellee, v. E. S. PRITCHARD ET AL, Appellants, and THE LE FEBURE LEDGER CO. ET AL, Appellants, v. EMIL LE FEBURE ET AL, Appellees.

**Corporations:** ISSUANCE OF STOCK: SPECIFIC PERFORMANCE. Equity 1 will aid a stockholder by specific performance or other suitable decree, who has made timely offer to pay the stipulated price of his *pro rata* share of an additional issue of corporate stock, where the same is not obtainable on the open market and the officers are withholding the same for the purpose of keeping control of the corporation.

**Same.** Where the corporation provides that settlement for new 2 stock shall be left to such time as agreeable to its board of directors, a stockholder who has made timely application therefor, or his assignee under an assignment thereof, has the right to take it up and pay for the same when called upon by the board.

**Same.** Where there is an increase in the stock of a corporation 3 and each shareholder is entitled to his *pro rata* proportion, a court will not hesitate to require its issuance to those entitled, simply because it will perpetuate the control of one faction as against another.

**Same:** WAIVER. A stockholder, in receiving stock to which he is 4 entitled, does not thereby waive his right to his *pro rata* share of an additional issue.

**Same:** LACHES. Where a corporation has resolved to take its own 5 time in which to require settlement for additional stock, a stockholder, who, within a reasonable time and before demand offers to settle and pay for his *pro rata* share, has neither waived his right thereto nor is he guilty of such laches as will deprive him of relief in equity.

**Same:** EQUITABLE RELIEF. Where officers of a corporation have 6 wrongfully issued stock to those shareholders not entitled thereto, for the sole purpose of gaining control of the corporation, equity will order its cancellation and issuance to the proper parties.

**Corporations:** ELECTION OF OFFICERS: FRAUD: EQUITABLE RELIEF: 7 EVIDENCE. As a general rule a court of equity has no jurisdiction to review a corporation election or to oust parties in possession who claim to have been elected; but where fraud

has been practiced in the election and usurpers are about to take possession unjustly, equity will sometimes interfere on the ground that there is no adequate remedy at law. Evidence held insufficient in the instant case to authorize equitable relief.

*Appeal from Linn District Court.*— HON. WM. G. THOMPSON, Judge.

WEDNESDAY, JULY 3, 1907.

THESE two actions were tried together in the district court, and are here submitted upon single abstracts, briefs, and arguments. The first is an action to compel defendants to issue and deliver to plaintiffs twenty-eight shares of the capital stock of a corporation known as the Le Febure Ledger Company, which it is claimed appellee applied and paid for, or is willing to pay for, in accordance with the terms of its issue; and the second is an action brought by the Le Febure Ledger Company and its claimed officers and board of directors to restrain defendants Emil Le Febure and others, who claim to have been elected directors of the corporation, from going upon the premises of the corporation, and from in any manner interfering with the management of the business thereof. In the latter action, defendants claimed that they were the duly elected directors of the corporation, and they asked that the injunction issued at the instance of the corporation be dissolved. They further claimed that they were in possession of the offices and business of the corporation as officers and directors thereof, and they asked that the business be restored to them, and that plaintiff be injoined from interfering with the performance of their duties. In the first case, the trial court granted the relief prayed, and ordered defendants Pritchard, Achter, and Fuhrmeister to reissue to plaintiff twenty-eight shares of stock, which they had secured to be issued to themselves, each one-third from the number of shares held by him, and they appeal. In the second case, plaintiffs petition was dismissed, the temporary

writ of injunction was dissolved, and plaintiffs were required to turn over to defendants therein the business and property of the corporation to be managed and controlled by them. From this decree, plaintiffs in the second case appeal. These plaintiffs are the defendants in the first suit above named.— *Affirmed* on first appeal. *Reversed* on second appeal.

*Redmond & Stewart,* for appellants.

*Jamison & Smythe, Voris & Haas,* and *W. J. Grunewald,* for appellees.

DEEMER, J.— The case is overburdened with abstracts, amended abstracts, and three large volumes of a typewritten transcript; each and all containing a great deal of immaterial and irrelevant matter. Primarily, the entire controversy is over the control of a corporation known as the Le Febure Ledger Company; most of the stockholders being divided into two hostile camps. It has been with great difficulty that we have extracted what seems to be the material and controlling facts, and, if any mistake be made in the statement of these, it is due to the confused state of the record. The case was argued orally, but from that we received no help whatever, and in turning to the printed briefs we find quite as much to confuse as to assist in untying the legal knots involved.

The Le Febure Ledger Company was incorporated October 28, 1897, with an authorized capital of $20,000, divided into shares of $25 each, and the articles provided that each share should be entitled to vote at all stockholders' meetings, whether special or annual. Emil Le Febure was the promoter of the company, and he exchanged a patent which he held for $10,000 worth of stock. But $7,500 more of the stock was issued prior to March 10, 1905, and on or about that date it was voted to issue the remainder of the stock to the amount of $2,500, to be sold for cash or given

in exchange for bankable paper due three, six, nine, or twelve months after date. In August of the year 1902, the articles of incorporation were amended, increasing the capital stock from $20,000, to $30,000, and on March 10, 1905, the board of directors voted to issue the $10,000 increase of the capital stock, and that the secretary notify the stockholders of their *pro rata* of this issue, and that any *pro rata* not taken and settled for by March 20, 1905, at ten o'clock a. m. should be sold by the board of directors on the open market. Le Febure was managing officer of the company until March, 1904, when trouble arose in its affairs, and he resigned; defendant Achter being selected in his place. March 16, 1904, Le Febure sold $4,500 of his stock in the company to Achter, and he (Achter) gave Le Febure a contract whereby he (Achter) undertook to resell the same to Le Febure within one year at an advance of eighteen per cent. on the face value thereof. About the time this controversy arose, Le Febure was anxious to repurchase the stock from Achter, and was endeavoring to borrow the money with which to do so. Achter, however, was seeking to control the corporation, and did all that he could to prevent Le Febure's getting the money with which to secure the return of the stock. But on March 13, 1905, Le Febure either repurchased the stock from Achter, or had it taken up by one Kluss. This stock does not seem to be in controversy in the first case now before us.

Pursuant to the action of the board; plaintiff in the first case, who held certain shares of stock in his own name, applied for his *pro rata* of the $10,000, being one and one-half shares, and for twenty-eight shares on account of stock issued to Mrs. Le Febure and one Tamblyn, and by them transferred to Emil Le Febure, Jr., and by him transferred to plaintiff Schmidt; and W. B. Reid applied for twenty shares on account of stock issued to Mrs. Le Febure and by her transferred to Emil Le Febure, Jr., and by him transferred to Reid. These applications were all made prior to

ten o'clock, March 20, 1905. It is claimed that at a meeting held March 20th the board extended the time for receiving applications until ten o'clock a. m., March 21, 1905, and it is also claimed that various stockholders, including plaintiff and Mrs. Le Febure, applied for more shares prior to ten o'clock a. m., March 21, 1905. Plaintiff undoubtedly did on that day apply for twenty shares on account of stock issued to Mrs. Le Febure, by her transferred to Emil Le Febure, Jr., and by him transferred to plaintiff Schmitt. Whether or not these are the same shares applied for by Reid does not very clearly appear. Mrs. Le Febure also applied for six shares in her own right. The record of the meetings of the board at one time showed an extension of time for closing the sale of the *pro rata* stock until March 21, 1905; but these were expunged by subsequent action of the board, according to the minutes kept by the secretary, which were written up as he had time to do so. Defendants claim that no extension of time for applying for the *pro rata* issue of stock was ever made, and this presents the principal fact issue in the main case.

It is conceded, however, that the board of directors did not immediately insist upon the closing up of the contracts for these *pro rata* issues of stock, and, resting in the belief that he had made timely application for his stock, plaintiff on May 27, 1905, went to the secretary of the company and delivered him a check for $1,700, receiving from the secretary a receipt which, so far as material, shows that the check was to cover the purchase price of the following stock, to-wit: " Twenty-eight shares on account of Mrs. Bertha T. Le Febure and W. H. Tamblyn and transferred by them to Emil Le Febure, Jr., and retransferred by him to Geo. R. Schmidt, applied for by 10 o'clock a. m. 3–20–05. Twenty shares on account of Mrs. Bertha T. Le Febure transferred by her to W. B. Reid, applied for by 10 o'clock a. m. 3–20–05. Twenty shares on account of Mrs. Bertha T. Le Febure transferred by her to Emil Le Febure, Jr., and re-

transferred by him to Geo. R. Schmidt, applied for by 10 o'clock a. m. 3–21–05. Sixty-eight shares Le Febure Ledger Company."

The check was returned to Schmidt by the secretary May 31, 1905, by registered letter; the secretary insisting that he had no authority to receive it, and that plaintiff was not entitled to any shares subscribed for after March 20, 1905, at ten o'clock a. m. There were issued to plaintiff forty shares of stock of the par value of $1,000, for which he paid; but twenty-eight shares of the value of $700 were withheld from him, because it is claimed his application therefor came too late, and that these twenty-eight shares were sold on the open market going into the hands of the defendants, or some of them. It is these twenty-eight shares which are the subject of controversy herein. If we get the facts from the record, defendants were mistaken in withholding twenty-eight shares, for at most plaintiff had applied for but twenty shares on March 21st. His application on March 20th, including the one put in by Reid, which he now claims to hold, amounting, excluding his own personal stock which has already been issued and settled for, to forty-eight shares. In this connection, it may be noted that one Hume made application for all unsold stock March 20, 1905 and being advised, or claiming to have been advised, of an extension of the time to March 21st, he renewed his application for all unsold stock at that time. Under any version of the record, plaintiff did not get all the stock to which he was entitled, for he had applied for all save twenty shares of the value of $500. before ten o'clock a. m. March 20, 1905.

There can be no doubt under the record that defendants were endeavoring to prevent both plaintiff and Emil Le Febure from getting their just proportion of the $10,000 increase in the capital stock in order to keep the control of the corporation in their own hands; and they so manipulated the affairs of the corporation that if unsuccessful they could withdraw $2,500 subscribed by them to that amount, to

make up the original capital of the organization. They also refused Hume's bid, and did not sell any of the stock upon the open market. They also gave notes for the stock issued to them which were not disposed of until about the time this case was tried. They justify themselves in this by saying that Le Febure's management of the plant was wasteful and ruinous, and that, during the time they were running it, they incurred large personal obligations, which would be jeopardized in the event Le Febure, Schmidt, and their faction obtained control. We shall have no occasion to go into this matter, as it is entirely beside the case. Le Febure and his associates, after the repurchase of the Achter stock, had a majority thereof, and could control the corporation, provided they got their *pro rata* of the $10,000 increase. If they did not get this, they were likely to lose control, and we are satisfied that defendants were doing everything in their power to keep the control and management in their own hands.

And here we may digress for a moment to say that, when the annual meeting of the stockholders came about in June of the year 1905, an injunction having been obtained against Achter and his associates from voting the twenty-eight shares of stock in controversy, the meeting was adjourned against the protest of Grunewald and Le Febure upon *viva voce* vote, until the final determination of the case in court; thus apparently perpetuating the defendant faction in office until the conclusion of that case.

If the remedy of specific performance will lie in such cases as this, it is manifest that plaintiff is entitled to have some of the shares applied for by him decreed to be issued, for defendants have not delivered all that he seasonably applied for. Whether or not he is entitled to the entire twenty-eight shares depends primarily upon whether or not his application made March 21, 1905, was timely. This is a question of fact affirmed on the one side, and denied upon the other. We have carefully examined the record on this point,

and are constrained to hold that the time for making the application was extended, as claimed. The preponderance of the testimony so indicates, and the conduct of all persons connected with the transaction is in line with this thought. The legal proposition involved we shall consider hereafter. Aside from this question of extension of time, the stock unapplied for on March 20, 1905, was not in good faith put upon the market. Defendant Achter and his associates apportioned all but $1,300 worth of what was left, after each was allotted his proportionate share, as applied for March 20th, among themselves, and gave to plaintiff and Le Febure but $1,300 as and for their *pro rata* share of the original issue and of what was left for sale on the open market. They unquestionably did this for the purpose of retaining control of the corporation, and in disregard of the rights of the other stockholders not associated with them. They disregarded Hume's application for the stock, and apportioned out to plaintiff and Le Febure just such proportion as they saw fit to award. Surely this procedure cannot be sustained either in law or in equity. This might not of itself entitle plaintiff to a decree of specific performance, and yet the defendants, under the circumstances disclosed, would not be entitled to more than their *pro rata* of the unapplied-for stock *Reese v. Bank*, 31 Pa. 78 (72 Am. Dec. 726); *Luther v. Luther*, 118 Wis. 112 (94 N. W. 69, 99 Am. St. Rep. 977).

Coming, now to the legal propositions: Plaintiff has offered to pay and settle for the twenty-eight shares of stock at the price agreed upon, to-wit, par. He also gave a check to the secretary, which covered this amount, and he has not at any time been in default. Defendants are withholding the stock to keep control of the corporation. The stock does not appear to have had a market value, and, so far as shown, cannot now be purchased upon the open market. By withholding the stock, plaintiff and his associates are deprived of the control of the corporation. Under such circumstances,

1. CORPORATIONS: issuance of stock: specific performance.

the law seems to be well settled that a court of equity will grant relief by way of specific performance, or will declare that plaintiff is the owner of the stock applied for by him. The rule as announced by Cook on Stock & Stockholders, section 338, which seems to be well fortified by authority, is that: "Where the value of the stock is not easily ascertainable, or the stock is not to be obtained readily elsewhere, or where there is some particular and reasonable cause for the vendees requiring the stock contracted to be delivered, a court of equity will decree specific performance and compel the vendor to deliver the stock." See, also, *Todd v. Taft,* 89 Mass. 271; *Treasurer v. Com. Co.,* 23 Cal. 390; *Chater v. Railroad,* 19 Cal. 219; *Appeal of Goodwin,* 117 Pa. 514 (12 Atl. 736); *New England Trust v. Abbott,* 162 Mass. 148 (38 N. E. 432, 27 L. R. A. 271); *Bomeister v. Forster,* 154 N. Y. 239 (48 N. E. 534, 39 L. R. A. 240); *Bumgardner v. Leavitt,* 35 W. Va. 194 (13 S. E. 67, 12 L. R. A. 776); *Perin v. Megibben,* 53 Fed. 86 (3 C. C. A. 443) See, also, cases cited in 26 Am. & Eng. Ency. of Law, 122.

Defendants rely upon certain propositions to defeat plaintiff's right which need some further consideration. It is insisted by them that Reid never transferred his shares to Schmidt, and that he (Schmidt) is not the real party in interest. There is in the record an assignment of twenty shares of stock from Reid to plaintiff, under date of May 24, 1905, and, in addition to this, oral testimony as to the assignment of the Reid stock to plaintiff. Neither plaintiff nor Reid had been requested to take up the stock applied for by them down to the time of the tender of the check on May 27th. On the contrary, by resolution of the board of directors, the settlement of all stock was left to such time as " was agreeable to the board of directors." The Reid stock was applied for in time, and plaintiff had the right under his assignment to take it up and settle for the same when called upon by the board.

2. SAME.

Next, it is contended that a court of equity should not

grant plaintiff relief which would put him and his associates in control of the corporation.    In some cases this is the rule.

3. SAME.    *Ryan v. McLane,* 91 Md. 175 (50 L. R. A. 514, 46 Atl. 340, 80 Am. St. Rep. 438).    But where, as here, plaintiff's faction is in control, and defendants are attempting to take and keep it out of that control through the issuance and manipulation of additional stock, it is clear that a court of equity will protect the parties in control, and will grant them what the law unquestionably allows, a *pro rata* share of the additional stock issue.    See Cook on Stock & Stockholders, section 286, and cases cited; *Gray v. Bank,* 3 Mass. 364 (3 Am. Dec. 156) ; *Baltimore Co. v. Hambleton,* 77 Md. 341 (26 Alt. 279) ; *Dousman v. Wisconsin Co.,* 40 Wis. 418.    In cases where there is an increase in the capital stock of a corporation, each shareholder being entitled to a *pro rata* proportion thereof, the officers of the corporation are regarded as trustees of the additional issue, and courts of equity are the more ready because of this trusteeship to decree specific performance.    *Johnson v. Brooks,* 93 N. Y. 337; *Williamson v. Krohn,* 13 C. C. A. 668 (66 Fed. 655) ; *Goodwin's Appeal,* 117 Pa. 514 (12 Atl. 736.)

Again, it is argued that, when plaintiff took his $1,000 in stock, he waived his right to demand more; but this cannot be so.    He was entitled to all he received,

4. SAME: waiver.    and in receiving that to which he was entitled he did not waive his right to demand all which should have been delivered.

Again, it is argued that by delay in making settlement for his stock, and by *laches,* plaintiff has estopped himself from insisting upon the delivery of the twenty-eight shares.

5. SAME: laches.    It seems that the officers and directors of the company took their own time in the matter of making settlement.    Within sixty-six days after applying for the stock, plaintiff tendered his check in settlement, which was received by the secretary, but afterwards returned.    Upon the return of his check, plaintiff almost immediately

offered to take and pay for the stock, but defendants would not issue the twenty-eight shares, on the ground that they had not been applied for in time, and they then informed plaintiff that all unapplied for shares had been sold in the open market, although, as a matter of fact, they had kept this stock for themselves. Surely there was neither a waiver nor such *laches* as will deprive plaintiff of relief in equity.

Again, it is said that plaintiff did not object to the so-called sales on the open market, but this is distinctly negatived by the record.

It is further contended that Achter received none of the twenty-eight shares which plaintiff is claiming; but he was one of the prime movers in the scheme to issue the additional stock and to deprive the Le Febure faction of control, and he profited at least to the extent of his *pro rata* of the increase of capital stock. Under such circumstances, he cannot be heard to say that he purchased none of the stock on the open market. There is some confusion in the record as to where these twenty-eight shares went to; but we are inclined to the view that they were issued to the Pritchard and Achter faction, and that defendants, as officers, should be compelled to cancel the sale thereof, and to issue the same to plaintiff, as prayed. The trial court seems to have been right in its conclusion on the main case.

6. SAME: equitable relief.

II. As to the second case, we have stated in a general way the nature of that action. Plaintiff therein and appellants here are not complaining, save in the most general way, of the order dismissing their petition, but they do insist that the court was in error in ousting plaintiffs from control, and in practically installing defendants as officers of the corporation. There is no doubt that the plaintiffs were elected at the regular annual meeting held in June, 1904, as the officers and directors of the corporation. Just before the regular June meeting of the year 1905, plaintiff in the first

7. CORPORATIONS: election of officers: fraud: equitable relief: evidence.

case, Schmidt, had sued out an injunction restraining plaintiffs in the second case from voting the $700 in shares of stock referred to in the foregoing opinion. The Pritchard and Achter faction then secured the attendance of enough stockholders so as to have an apparent majority on *viva voce* vote. The regular meeting was called to order by the president, and the following proceedings are shown by the minutes: "Annual Stockholders' Meeting, June 13, 1905. Meeting called to order by the president. It was moved by Mr. Achter, and seconded by Mr. Fuhrmeister, that in view of the fact that an injunction had been issued by the district court of Linn county, Iowa, restraining the voting of a certain amount of the stock of this company, the stockholders' meeting for the election of officers be adjourned until this matter is determined by the court. The motion upon voice vote carried; Mr. Grunewald and Mr. Le Febure objecting. The meeting then adjourned. J. G. Irving, Secy. Approved as read."

Almost immediately Grunewald, who was vice president, and who represented the Le Febure faction, made a motion to reconsider; but the president refused to recognize his motion, declaring that the meeting was adjourned. Grunewald then asked the president if he refused to recall the adjournment, to which the president responded that he did. Grunewald, who was vice president, then recalled the adjournment, because it was not declared by a stock vote, and called the meeting to order as vice president, and Schmidt was elected as temporary secretary. It was then discovered that there were five hundred and ninety-four and one-half shares present and participating in this meeting, presided over by Grunewald, not counting the twenty-eight shares in dispute. These stockholders then proceeded by stock vote to elect defendants in the second case as the board of directors for the year commencing in June, 1905. After the election of the board, it (the board) proceeded to elect Le Febure as president, Grunewald as vice president, Buckman as treasurer,

and Schmidt as secretary. Pritchard, president, and Irving, secretary, were present all the time, but took no part in the meeting presided over by Grunewald; and Achter was in and out, but took no part. It should also be noted that a stock vote was called on the motion to adjourn after Grunewald took the chair, and the vote was in the negative. When the motion was originally put by the president to *viva voce* vote, he did not call the negative vote, but, believing that a majority had voted aye, he declared the meeting adjourned.

It is provided in the articles of incorporation and by-laws of the Le Febure Ledger Company that each share of stock shall be entitled to vote at all stockholders' meetings, whether annual or special, and that a quorum of stockholders for the transaction of business shall consist of the presence of representatives of a majority of the stock subscribed. That a vote should be cast by the stockholder, if present; or by a representative holding a proxy, if not present. It was also shown that it was customary to vote on adjournments and other matters, except the election of directors, by *viva voce* vote. From this statement it will be observed that plaintiffs claim to be entitled to the management of the corporation as "holdover" officials by reason of the adjournment mentioned, while defendants claim to be entitled to the management of the business because of their election at the regular annual stockholders' meeting in June, 1905. The record of the proceedings of the stockholders as kept by Schmidt reads as follows:

Minutes of Stockholders' Meeting of Le Febure Ledger Company, at the Time and Place Fixed by the Articles of Incorporation, the Office of the Le Febure Ledger Company, No. 224 First Avenue. There were present the following stockholders: Achter, Fuhrmeister, Irving, Pritchard, Grunewald, Emil Le Febure, Leo Le Febure, Bertha T. Le Febure, B. H. Buckman, Fred Kluss, and George R. Schmidt. That all the stock of said corporation was represented in person or by proxy. Thereupon E. S. Pritchard, president, and H. J. Achter, manager, attempted to adjourn

the stockholders' meeting by calling for the ayes and noes, and four persons who were not stockholders voted. That objection was made by Grunewald and other stockholders. Thereupon Pritchard, president, declined to act or preside at the meeting, and Irving, secretary, declined to act or preside at the meeting, and Grunewald, vice president, acted as president, and Schmidt was appointed temporary secretary. There were cast 594½ shares of stock, representing $14,-862.50 of the capital stock of said corporation, for the following board of directors: Emil Le Febure, Grunewald, Buckman, Schmidt, and Bertha T. Le Febure; the above being all the stock voted or offered to vote at said annual election. Thereupon it was declared that Emil Le Febure, Grunewald, Buckman, Schmidt, and Bertha T. Le Febure were the duly elected board of directors of the Le Febure Ledger Company for the ensuing year. On the same day, June 13, 1905, the board of directors above named reorganized and elected the following officers: Emil Le Febure, president; Grunewald, vice president and manager; Buckman, treasurer; and Schmidt, secretary. Attest: George R. Schmidt, Secy.

After this election, and before the service of the temporary writ of injunction in the second case, each faction claimed to be in control of and directing the business of the company. Grunewald and Le Febure remained in the building over night and assumed to direct the employés, while Fuhrmeister had possession of the office and books and of the combination to the safe in which the books were kept. Achter and his faction had a policeman present to protect the property and to prevent the other faction from getting into the safe. The trial court held that the order for adjournment upon *viva voce* vote was illegal, decreed the election of the defendants as officers to be valid, and ordered plaintiffs to turn over the books and paper and business of the corporation to the defendants as officers and directors. The appeal challenges these rulings.

It is the general, if not universal, rule that a court of equity has no power or jurisdiction to entertain a bill for the purpose of reviewing a corporation election, much less to oust

parties in possession who claim to have been elected. But where a palpable fraud has been practised in the election, and usurpers are about to take possession of the property, in violation of all justice, courts of equity will sometimes interfere to prevent them from doing so. *People v. Railroad,* 57 N. Y. 161; *Perry v. Co.,* 93 Ala. 364 (9 South. 217); *New England Co. v. Phillips,* 141 Mass. 535 (6 N. E. 534); *Owen v. Whitaker,* 20 N. J. Eq. 122; *Johnson v. Jones,* 23 N. J. Eq. 216; *Humboldt v. Stevens,* 34 Neb. 528 (52 N. W. 568, 33 Am. St. Rep. 654). The rule seems to be the same whether the officer is of a public or of a private corporation. *State v. Alexander,* 107 Iowa, 182. The reason for this is that there is an adequate remedy at law, and in such cases an injunction will not lie to restrain one from acting as an officer on the ground that he is not entitled to the office. Certain states have cured this by statute providing a more speedy remedy, but there is no such statute in this jurisdiction. See statutes and cases cited in Cook on Stock & Stockholders, section 619, and *District Twp. v. Barrett,* 47 Iowa, 110. The record shows upon its face a proper adjournment of the regular stockholders' meeting; and the Schmidt-Le Febure faction did not take the necessary preliminary and parliamentary steps to set that adjournment aside. Although in the majority, they were dissenters, and without any proper showing withdrew, and without authority called another meeting. Plaintiffs were in possession of the property when the action was brought in virtue of their previous election, which was never called in question, and by reason of the adjournment held over until a new election was had. It is true that they called in some outside stockholders in order to have a majority on *viva voce* vote in order to secure this adjournment. But there was, in view of the question regarding the $700 in stock, no fraud in this which would justify a court of equity in assuming jurisdiction. The general rule to which we have referred is stated in 2 High on Injunctions (3d Ed.), section 1, and cases cited.

Defendants filed their amendment, asking to be restored to the possession of the property and of the business of the corporation after the case had been submitted, and over the objections of the plaintiffs in the second case. The evidence does not show that defendants were in possession (save as they took it by force) when the second action was commenced. Even then they did not have full possession. On the whole record, we are disposed to hold that the trial court was in error in rendering the decree that it did, and in turning over the property to the defendants. Plaintiffs are not complaining of the decree save in this respect, as we understand it; and in view of the holding in the first of these cases, it is largely immaterial what order shall now be made as to the possession and control of the business and property of the corporation. The trial court correctly found in the second case that Schmidt was entitled to the $700 in stock, and, under the order for an adjournment of the stockholders' meeting, another meeting will now be called, and an election held in a proper and legal way. It makes little difference as to who remains in possession in the interim between the filing of this opinion and the election; but, if there be any point to this, it may be well to say that the Achter-Pritchard faction' is entitled to the possession under the record before us until a new election is held.

The result of the whole matter is that the first case must be affirmed, and the second reversed. Appellants will pay two-thirds, and appellees one-third, of the costs of this appeal.— *Affirmed* on first appeal.   *Reversed* on second appeal.