JOHN S. IRVING, appellant,

*v.*

MUTUAL TRUST COMPANY et al., respondents.

[Submitted December 5th, 1913.   Decided March 16th, 1914.]

1. In order to entitle one to redeem collateral pledged to secure a debt for which he is liable as surety, he must pay, or tender, the entire debt due by his principal to the creditor holding a collateral, pledged to secure the payment of any and all liabilities due to him by the pledgor.   It is not enough to offer to purchase the collateral for a price less than its value; the offer should be to redeem and thus preserve the pledgor's right in any surplus.

2. Where a creditor holding obligations of his debtor, some of which are endorsed by third parties, and some not, the creditor may, in the absence of special pledge, appropriate the proceeds of the collateral to the payment of the obligations not endorsed in preference to those that are, unless there are circumstances existing which would render such procedure inequitable.

On appeal from a decree of the court of chancery advised by Mr. J. Franklin Fort, as advisory master.

*Mr. Samuel Koestler,* for the appellant.

*Messrs. Howe & Davis,* for the Mutual Trust Company, respondent.

*Messrs. Pitney, Hardin & Skinner,* for the Federal Trust Company, respondent.

The opinion of the court was delivered by

BERGEN, J.

The appellant seeks by a bill in equity to enforce the application of the proceeds of a collateral security pledged by John W. Crooks to the Mutual Trust Company, to secure his indebtedness

to it, to the payment of a note of the pledgor for $1,700, dated November 30th, 1908, held by the Mutual Trust Company on which the appellant was liable as endorser.

The material facts upon which this bill of complaint is founded are these: On the 1st day of July, 1905, the Mutual Trust Company loaned to John W. Crooks $4,900, who deposited with the trust company fifty shares of the stock of the Westfield Land and Improvement Company

"as collateral security for the payment of this or any other liability or liabilities of the undersigned, direct or contingent, individual or firm, to said trust company now existing, or which hereafter may be contracted."

The Mutual Trust Company subsequently purchased other obligations of Crooks, one of them being a note for $1,700, endorsed by the appellant, the total amount of which, excluding interest, the amount of which was not shown, was, on November 12th, 1908, $9,900, and on the 18th day of November, 1908, it purchased from the Federal Trust Company a note made by Crooks payable on demand for the sum of $5,247.50, Crooks having previously, and on November 12th, 1908, written to the Mutual Trust Company as follows:

"Enclosed please find my demand note for five thousand two hundred and forty-seven dollars and fifty cents ($5,247.50) to be paid from the proceeds of the sale of the fifty shares of stock of the Westfield Land and Improvement Company. herewith assigned to you."

The note upon which the appellant was endorser matured November 4th, 1908, and, not being paid, was duly protested, and on November 30th, 1908, paid by the proceeds of another note of like sum endorsed by the appellant. Prior to November 30th, and on November 12th, the stock of the Westfield Land and Improvement Company was transferred on the books of that company to the Mutual Trust Company, which continued to hold the stock until the Westfield Land and Improvement Company liquidated, and then applied the proceeds to the payment of the indebtedness of Crooks other than that on which the complainant was liable as endorser, and the appellant refusing to pay this note, the Mutual Trust Company brought suit to recover the

amount due thereon, whereupon the appellant paid the note and filed his bill of complaint.

There was evidence that when the secretary and treasurer of the Mutual Trust Company, Mr. Phillips, brought the stock to the Westfield Land and Improvement Company, of which complainant was president, on November 12th, 1908, for transfer to the trust company, complainant offered to pay $10,000 for the stock which it was admitted was then worth $12,500, and also that Mr. Phillips promised complainant that the note on which he was endorser should be paid out of the proceeds of the collateral stock when sold. The bill also charges that the Mutual Trust Company and the Federal Trust Company conspired and agreed that the note for $5,247.50 should be assigned to the Mutual Trust Company by the Federal Trust Company in order that it might be protected by the collateral and so secure the Federal Trust Company from loss, and that the debt represented by said note "is not a *bona fide* indebtedness of said Crooks to the Mutual Trust Company." There does not appear in this record any prayer for subpœna for the Federal Trust Company, but it has appeared and answered. The advisory master, by whom this cause was heard, advised the chancellor that the bill be dismissed, and it was so decreed, from which complainant appeals.

The appellant rests his claim for a reversal upon several propositions, the first of which is, that as the note upon which he is bound as endorser was entitled to the benefit of the collateral, prior to the acquisition of the note for $5,247.50 from the Federal Trust Company, he had a vested interest in the collateral which the pledgee could not divest by any subsequently acquired obligation of Crooks, and that when it purchased the latter note, it did so subject to a prior right of the complainant to have the collateral held as security for, and the proceeds applied in extinguishment of, the note upon which he was liable. Whatever rights the appellant had in the collateral, it was not enhanced or aided by the offer to purchase it for $10,000, because the right of a surety to redeem a pledge, if it exist, is not exercised by an offer of a price for the pledge. It must go beyond that and include the entire debt for which it is held, for a

surety's right to subrogation only arises when he has paid the entire claim for which the creditor holds the collateral. *Jones Pl. & Col. Sec. (2d ed.)* § *513.*

In the present case, the offer was not to redeem and thus preserve the right of the pledgor in any surplus, but to purchase the stock. This the pledgee could not agree to, even if the price covered the entire indebtedness, without the consent of the pledgor. Nor was there any legal tender made to the trust company; all the complainant did was to make an offer to the secretary and treasurer, which the latter said he would submit to the company, for the purchase of the stock. When the appellant paid the note upon which he was endorser, January 19th, 1911, he wrote to the Mutual Trust Company notifying it that it

"should not transfer or dispose of said shares of stock as I intend to redeem the same upon equitable principles, and if we cannot agree upon the matter, I will apply to the court of chancery to be subrogated to your rights in and to said fifty shares of stock, and for that purpose I am now ready and willing to pay to you the sums of money for which you are legally entitled to hold said shares of stock as collateral security."

This notice also demanded the circumstances under which the note dated November 12th, 1908, was acquired by the Mutual Trust Company on the 18th day of that month, and concluded with the statement that on obtaining this information, he was ready to pay the sums of money for which the trust company was lawfully entitled to hold the collateral. This cannot be taken to be an offer to pay the entire indebtedness, and in addition to this the supplemental bill filed charges that this note does not represent any indebtedness by Crooks to the Mutual Trust Company, and that the trust company is not entitled in equity to apply the collateral towards the liquidation of this note.

There is no claim made in this case that there was any special pledge of this stock to secure the note endorsed by the appellant, and therefore his right to any benefit therefrom must rest upon the general rules of law applicable to the duty of a pledgee in applying the collateral in discharge of the pledgor's debts for which the security was pledged. In this case the written pledge declared that the stock was deposited as collateral security for the payment of the note for $4,900, dated August 30th, 1905,

and for any other liability or liabilities of the pledgor "now existing, or which may hereafter be contracted," and what the appellant seeks is subrogation to the creditor's right to this pledge without tendering or paying his entire claim against the pledgor of the collateral, and this the appellant is not entitled to, because the creditor has the primary right to apply the collateral towards the discharge of such debts, and in such order, as it may determine, unless there are circumstances which would render such procedure inequitable. It is true that the collateral is a trust fund which cannot be released except upon the discharge of all the obligations of the principal debtor it is pledged to secure, without releasing sureties on such obligations, but if it be applied solely to the discharge of the debtor's obligations, so far as it will extend, the surety has no vested right to have a preference in payment simply because his debt came into existence prior to another also entitled to the benefit of the collateral. *Wilcox* v. *Fairhaven Bank et al., 89 Mass.* (*7 Allen*) *270; Fall River National Bank* v. *Slade, 153 Mass. 415; 26 N. E. Rep. 843.*

There is also another difficulty with complainant's case, for under the admitted facts, the note upon which he was endorser came into existence after the note, the payment of which out of the collateral is his chief ground of complaint. The note upon which suit was brought, and which he paid, the amount of which he now seeks to have restored to him out of the proceeds of the collateral, did not mature until February 1st, 1909, and all of the obligations of Crooks to which the collateral was applied had matured prior to that date, and was subject to their payment before the obligation upon which the appellant was liable as surety had matured.

The next point raised is that, as the appellant claims, when Mr. Phillips, the secretary and treasurer of the Mutual Trust Company, came to him, as president of the Westfield land company, to transfer the stock to the Mutual Trust Company, Phillips agreed that the note of $1,700, endorsed by the appellant, should be paid out of the proceeds of the stock, and therefore an equity arose which the Mutual Trust Company cannot now evade. This agreement Phillips denies, but if it be admitted, it is not perceived how Mr. Phillips could bind the board of direc-

tors of his company by any such contract. He had gone, or been sent, to the Westfield Land and Improvement Company for the sole purpose of having the stock transferred, and no authority is shown which empowered him to make a contract binding on the trust company about a matter clearly not within the ordinary course of the business committed to him as secretary and treasurer of the Mutual Trust Company, and therefore it is not shown that the trust company made any such contract, whatever force it might have, if it existed.

The next point is that there was a conspiracy between the Federal Trust Company and the Mutual Trust Company to defraud the appellant by the transfer and purchase of the note for $5,247.50, and in obtaining from the debtor a special pledge of this stock. There are some circumstances from which an inference may be drawn that there existed an agreement, or understanding, that if the Federal Trust Company obtained the note for the indebtedness of Crooks to it; and a pledge of the stock, the Mutual company would take it, but if this be admitted, we fail to see why the Federal company had not a right to secure a just debt in this manner. It amounted to nothing more than persuading a debtor to pledge his stock to secure a debt, and while the proceeding may have been enterprising, it cannot be said to be fraudulent, for so far as the record shows, the Federal Trust Company had no knowledge of complainant's endorsement or the amount of Crooks' liability to the Mutual Trust Company. That the debt for which this note was given was *bona fide* was shown, and there is no evidence of a conspiracy to defraud the appellant.

The only other important question to be solved is whether the Mutual Trust Company had a right to apply the collateral to the note purchased November 18th for $5,247.50. This, we think, must be answered in the affirmative. Except the letter of November 12th, relating to this note, there was no specific pledge of the collateral as security for any particular debt other than the note for $4,900 given when the original written pledge was executed, and that was to secure "this or any other liability * * * now existing, or which hereafter may be contracted," and the collateral was applicable to any existing, or subsequent, debt of the pledgor in the order selected by the pledgee, even if

part of the loans were secured by endorsers. It is urged by the appellant that his right to subrogation once existing it could not be changed. Granting, but not conceding this, what was his right? It was to have the collateral applied in discharge of Crooks's debts to the Mutual Trust Company subject to the legal effect of the contract of pledge, which was not limited to any particular debt, but extended to any then existing or thereafter created, and certainly in the absence of any direction by the debtor, the pledgee might apply it to any of the several obligations, the payment of which it was pledged to secure.

The decree will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER—12.

*For reversal*—None.