ESSEX v. ESSEX.

CORPORATIONS—UNISSUED STOCK—SALE—FRAUD—SETTING ASIDE.
    A sale of unissued stock in a corporation, at a grossly inadequate price, for the purpose of perfecting the control of the corporation, by the majority and the purchaser, of which facts the purchaser has knowledge, is a fraud on the minority stockholders, and will be set aside.

Appeal from Wayne; Donovan, J. Submitted April 6, 1905. (Docket No. 37.) Decided September 19, 1905.

Bill by George B. Essex and others against John H.

Essex, Randall H. Mitchell, Henry C. La Flamboy, and the G. B. Essex Brass Company to set aside the sale of certain stock. The defendant company filed a cross-bill asking for an accounting. From a decree for complainants, and dismissing the cross-bill, defendants appeal. Affirmed as to the original bill, and reversed as to the cross-bill.

*Gray & Gray*, for complainants.

*Lodge, Trevor & Brown* (*Corliss, Leete & Joslyn*, of counsel), for defendants.

MONTGOMERY, J. The G. B. Essex Brass Company was organized in 1900. It was originally intended to organize with capital of $45,000, of which one-half was to be subscribed and paid in. The subscription of the complainant George B. Essex was to be paid by turning in to the company certain patents at a price of $7,500. It was found on investigation that as the law then stood the entire capital stock must be subscribed. Each of the subscribers doubled his subscription, but when the stock was issued there was in fact issued to each subscriber one-half of the stock subscribed by him as full paid stock. The remaining one-half of the shares were not issued. The business of the company was from the first prosperous, so that in May, 1904, while no dividends had been paid, the earnings had amounted to more than $27,000, and the book value of the stock was something more than $22 per share. Allowing for depreciations, the stock was apparently worth nearly if not twice double its par value. At this time there was friction in the board of directors. Complainant G. B. Essex was treasurer and general manager, the defendant J. H. Essex was president, and the defendant Mitchell secretary. The three constituted the board. It was suggested that a lot adjoining the company's plant be purchased for the purpose of building a foundry thereon. Complainant G. B. Essex was at first opposed to paying for the purchase of this lot, and asserted arbi-

trarily that he would not honor a check for the same. Later on, however, after defendants Essex and Mitchell had opened negotiations for a sale of stock to La Flamboy, complainant G. B. Essex offered to pay for the lot if purchased. On May 31st the defendants Essex and Mitchell negotiated a sale of 525 shares of the unissued stock to defendant La Flamboy at par. This bill is filed by the other stockholders to set aside this sale as made in fraud of their rights. It is complainants' theory that this unissued stock is to be treated as a new issue of stock, authorized by an increase of the capital stock, and that, within the principle of *Hammond* v. *Illuminating Co.*, 131 Mich. 79, the then present holders of stock were entitled to have assigned to them for purchase at par their just proportion of the new shares. It is further charged that the issue of these shares at the inadequate price received was not for the purpose of raising needed funds, but was in reality for the purpose of placing this stock in the friendly hands of one who would continue the authority of the defendants Essex and Mitchell in the management of the corporation, and that this purpose was understood and assented to by the defendant La Flamboy.

The defendants contend that the purchase by La Flamboy was in good faith, that the stock is not to be treated like a new issue, but as treasury stock, and that as such it might lawfully be sold to any one who might choose to buy it. We find it unnecessary to decide whether in any circumstances this stock might in good faith and in the interests of all the stockholders have been issued at a fair price by the directors without first offering the stock to the then shareholders. We are satisfied that the controlling purpose of this sale to La Flamboy was, not to replenish the treasury nor raise money to buy the lot in question, but was to enable the defendants to increase their voting power sufficiently to give control of the corporation to themselves and La Flamboy, with the expressed object of continuing themselves as directors. La Flamboy un-

derstood and assented to this. We are also convinced that the anxiety to effectuate this purpose led to a sale of this stock at a grossly inadequate price. A sale induced by such motives and working an injury to the other stockholders ought not to be permitted to stand. *Way* v. *Grease Co.*, 60 N. J. Eq. 263.

It is contended that defendant La Flamboy purchased in good faith, and that the remedy, if any exists, is by an action against the directors. We are satisfied that there were abundant facts known to La Flamboy to put him on inquiry. The book value of the stock was more than double the price paid by him, and it must have been known to him that the controlling motive of the defendants Mitchell and Essex was to place the stock with one who would co-operate with them.

The defendant company filed a cross-bill against George B. Essex, and appeals from the decree which granted the relief prayed in the original bill and dismissed the cross-bill. It appears that George B. Essex, in October, 1901, caused a credit of $750 to be entered in his account upon the books of the company for a transfer of two certain patents to the company. The preponderance of the testimony sustains the claim of defendant that these patents were considered and allowed for at the time of the incorporation. It also appears that in a certain deal with one Deare, by which G. B. Essex acquired his stock, Essex took credit for $120.06 due Deare for wages. It is stated in the brief of counsel that Deare has sued the company for this sum.

The cross-bill will be dismissed as to this item without prejudice, but as to the credit of $750 improperly made to George B. Essex the cross-bill is sustained, and the latter will be required to account. Complainants will recover costs against defendants, and the defendant company will recover its costs against complainant George B. Essex, including one-half the cost of printing record and briefs.

CARPENTER, McALVAY, GRANT, and HOOKER, JJ., concurred.