Taft, J.
At the outset, it should be observed that the judgment of the Court of Appeals found all the issues raised by the pleadings in favor of plaintiffs. However, since all the evidence considered by the Court of Appeals has been incorporated in a bill of exceptions, this court can, without weighing evidence, disregard such a general finding as a finding for plaintiffs on a particular factual issue, if the evidence in the record requires a different finding as a matter of law on such factual issue. For this reason, reference will be made in this opinion to certain facts which are established as a matter of law by the record.
Although the evidence discloses that, prior to the end of October 1950, one of the plaintiffs received one share of permanent stock which was apparently issued after payment in full for stock authorized by the resolutions of April 14 and July 14, 1948, the allegations of the pleadings do not indicate any controversy between these parties with respect to that share or shares issued prior to December 1952 to other parties, but only with respect to the 370 shares issued to plaintiffs in December 1952. There are no allegations in the pleadings which indicate or even suggest issuance to plaintiffs of any other shares. For this reason, we believe the judgment of the Court of Appeals *429 is and should be considered as limited to a determination between the parties as to rights with respect to the 370 shares issued to plaintiffs in December 1952.
We have carefully examined the record and have determined that the evidence therein requires the conclusion, as a matter of law, that the subscriptions for 511 shares, authorized in the April 14 and July 14, 1948, resolutions of the board of directors of defendant corporation, were only for running stock, which was legally subject to redemption and cancellation by defendant corporation, and not for permanent stock of defendant corporation; that, except with respect to 97 of those shares, which were subsequently paid for in full and thereafter issued as permanent stock prior to the end of October 1950, all the shares of stock so authorized by those 1948 resolutions were' legally redeemed and cancelled and the subscriptions therefor cancelled by mutual agreement between the subscribers therefor and defendant corporation prior to the end of October 1950; that the shares of permanent stock subsequently paid for by plaintiffs and issued to them in December 1952 were first authorized by the board of directors at its meeting on December 11, 1952, notwithstanding the references in its minutes at that time to its April and July, 1948, resolutions with respect to subscriptions for running stock and notwithstanding the statements in those minutes that the shares being issued in December 1952 were being-issued pursuant to those earlier 1948 resolutions; and that, except for those shareholders who participated in the issuance of those 1952 shares or those who may have known all about what was going on with respect to their issuance at that time, the shareholders of defendant corporation generally had no reasonable notice or opportunity to subscribe for the shares of permanent stock so authorized by the board and issued to'plaintiffs in December 1952.
*430 It is apparent that, since all the shares so authorized by the December 11, 1952, resolution of the board of directors were, under its terms, to be paid for within a week thereafter or forfeited, the directors did not intend to give the other shareholders of defendant corporation any notice of or opportunity to subscribe for any of those shares. In view of the fact that all those shares were issued by December 16, 1952, it is obvious that other shareholders had no such notice or opportunity, and that plaintiffs necessarily knew that they did not. There is no evidence in the record which will support a reasonable conclusion that any shareholder, other than plaintiffs and the directors of defendant corporation, even if he had examined the records of defendant corporation before December 11, 1952, could have suspected that shares of permanent stock were to be issued to plaintiffs or others in December 1952.
So far as pertinent, Section 8623-35, General Code, reads:
“Except as otherwise provided in the articles, the holders of the shares of any class of a corporation, except shares which are limited as to dividend rate and liquidation price, shall, upon the sale for cash of shares of the same class, have the right, during a reasonable time and on reasonable terms and conditions to be fixed by the board of directors, to purchase such shares in proportion to their respective holdings of shares of such class, at such price as may be fixed in the manner hereinbefore provided.
“Except as otherwise provided in the articles, shares shall not be subject to such pre-emptive rights if
“(a) offered after organization' to shareholders then having pre-emptive rights for subscription at a stated price and within a reasonable time and on reasonable terms and conditions fixed by the board of- di *431 rectors and not subscribed for by them, and thereupon issued or agreed to be issued for an amount of consideration not less than that at which such shares were so offered to the shareholders, less such reasonable compensation, allowance or discount for the sale, underwriting or purchase of such shares as may be fixed by the board of directors, unless and until by the vote, consent or written order of the holders of two-thirds of the shares otherwise entitled to such pre-emptive rights, such pre-emptive rights are restored as to any of such shares not theretofore issued or agreed to be issued; or
i i # # #
“ (d) released from pre-emptive rights by the vote or written consent or order of the holders of two-thirds of the shares entitled to such pre-emptive rights. Any such vote, consent or order shall be entered in the records of the corporation and shall be binding on all shareholders and their transferees for the time specified in such vote, consent or written order up to but not exceeding one year, and shall protect all persons who may within such time acquire the shares or options on or rights in respect of the shares so released * * V’
Since no provision of subparagraphs a to f, inclusive, of Section 8623-35, General Code, can justify the conclusion in the instant case that the shares sold to plaintiffs in December 1952 were not subject to the pre-emptive rights provided for by that statute, it is apparent that defendant corporation, acting through its board of directors, had no power to sell to plaintiffs the shares which were issued to them in December 1952, unless it either (a) had previously offered those shares to the other shareholders of defendant corporation in accordance with the provisions of that statute, which had not been done, or (b) the sale was “subject to such pre-emptive rights” of those other sharehold *432 ers. It follows, therefore, that any right or title of plaintiffs to those shares was acquired by plaintiffs subject to the pre-emptive rights of other shareholders provided for by Section 8623-35, General Code. See Schmidt v. Pritchard, 135 Iowa, 240, 112 N. W., 801, 805; Gord v. Iowana Farms Milk Co. (Iowa), 60 N. W. (2d), 820, 831.
It is thus apparent that the Court of Appeals’ decree provided plaintiffs with more equitable relief than that to which they were entitled. For example, Section 8623-35, General Code, requires the board of directors to fix the reasonable time during which and the reasonable terms and conditions upon which shareholders of defendant corporation shall have a right to purchase the shares of permanent stock issued to plaintiffs in December 1952; the board has admittedly not discharged the obligation thereby imposed upon it; and its performance of that obligation might quite properly require defendant corporation to do something “to interfere with” plaintiff’s claimed “rights * * * with respect to” the shares issued to them in December 1952, although the doing of that something might represent a violation of the terms of the decree of the Court of Appeals. Also, to the extent that the exercise of pre-emptive rights by other shareholders may lawfully result in the taking from plaintiffs of shares issued to them in December 1952, defendant corporation should not be prevented from requiring plaintiffs to surrender such shares to defendant corporation for reissuance to those other shareholders. Of course, no such surrender of shares can be required unless plaintiffs have been or are reimbursed for amounts paid to defendant corporation for the shares so surrendered. See Gord v. Iowana Farms Milk Co., supra, 832.
On the other hand, we can see no justification for the action of defendant corporation’s board of direc *433 tors and of defendant corporation in cancelling, without any reference to valid subscriptions by other shareholders therefor, any of the shares issued by defendant corporation to plaintiffs in December 1952. A corporation ordinarily has and it is conceded that, under its constitution and bylaws and the statutes of this state, defendant corporation had the power and right to sell its authorized but unissued shares. In the instant case, the sale was made at an amount not less than par. Although it is alleged that “the book value” of these shares “was reasonably worth” much more than the price for which they were sold, there is no allegation that they were sold for less than they were reasonably worth. The book value of stock does not determine its value or reasonable worth. Opdyke v. Security Savings & Loan Co., 157 Ohio St., 121, 105 N. E. (2d), 9; National Tube Co. v. Peck, Tax Commr., 159 Ohio St., 98, 111 N. E. (2d), 11; Society for Savings v. Peck, Tax Commr., 161 Ohio St., 122, 140, 118 N. E. (2d), 665. In any event, the evidence in the record does not require a finding as a matter of law that these shares were reasonably worth or had a value in excess of the amount paid for them by plaintiffs.
It is elementary that one, who has sold and delivered property to another, cannot ordinarily unilaterally cancel and annul the sale. See Gaff v. Flesher, 33 Ohio St., 107, 112. If there are any legal or equitable grounds for rescinding a sale, the seller may elect to avoid it on those grounds, but the judgment of the Court of Appeals in the instant case has negatived the existence of facts which would support any such grounds and we do not believe that the evidence in the record requires, as a matter of law, any different findings with respect to those facts.
The mere fact, that a corporation has sold shares of its authorized and unissued stock which are subject to the pre-emptive rights of shareholders provided *434 for by Section 8623-35, General Code, without offering those shares to shareholders in accordance with the provisions of that statute, will not justify the corporation in cancelling, without reference to valid subscriptions of shareholders therefor, any of the shares so sold.
Although it is difficult to see any damage to the corporation as a result of the sale of its shares for an amount equal to their par value, if it had been alleged and the trial court in the instant case had found that the amount received for the shares sold to plaintiffs was less than those shares were worth, then it might reasonably be argued that the corporation was damaged by such sale. See Essex v. Essex, 141 Mich., 200, 104 N. W., 622. But see 13 American Jurisprudence, 322, Section 208; annotation, 56 A. L. R., 396.
However, pre-emptive rights of shareholders are rights of the shareholders and not rights of the corporation. If those rights have value and shareholders are deprived of those rights, it is the shareholders - who are damaged, not the corporation. Thus, if the action of the corporation deprives a shareholder of his pre-emptive rights, the shareholder may have an action against the corporation to recover for their value. Stokes v. Continental Trust Co., 186 N. Y., 285, 78 N. E., 1090, 12 L. R. A. (N. S.), 969; Gray v. Portland Bank, 3 Mass., 364, 3 Am. Dec., 156. Also, if such a remedy at law would be inadequate as a protection for the shareholder’s interests in the corporation, the shareholder may have equitable relief to protect those interests. Glenn v. Kittanning Brewing Co., 259 Pa., 510, 103 A., 340; Luther v. C. J. Luther Co., 118 Wis., 112, 94 N. W., 69. See Witherbee v. Bowles, 201 N. Y., 427, 95 N. E., 27; Humboldt Driving Park Assn. v. Stevens, 34 Neb., 528, 52 N. W., 568, 33 Am. St. Rep., 654. But the corporation is not damaged merely be *435 cause its shareholders are deprived of - such rights, and, therefore, the corporation has no legal or equitable right with respect to their enforcement. Thus, in Waters v. Horace Waters & Co., 201 N. Y., 184, 188, 94 N. E., 602, 603, it is said in the court’s opinion:
“* * * the plaintiff, in the absence of any waiver or matter of estoppel, had a personal right of action growing out of the issue of the Hamilton stock, but it was a right of action against the corporation, not in its behalf. No conceivable injury could be sustained by the corporation by reason of the issue and sale of three shares of its capital stock at par, unless as matter of fact a larger price was obtainable therefor. There is no finding that this was less than its actual value.”
Again, in Chapman v. Troy Laundry Co., 87 Utah, 15, 35, 47 P. (2d), 1054, it is said in the court’s opinion:
“No authorities are cited by counsel in support of the claim that the stock should be cancelled because they were not given their right to purchase, where there is nothing to show that, they wanted to purchase, that they would have taken the stock if it had been offered to them or that they have been injured in any way excepting from the viewpoint of the control of the corporation. ’ ’
Cf. Clarke v. Thomas, Recr., 34 Ohio St., 46.
In the instant case, no shareholder is before the court complaining with respect to the loss of his preemptive rights or with respect to the effect of the sale of this stock on his rights as a shareholder.
It may be observed that, as holders of shares of defendant corporation which were outstanding on and prior to December 12, 1952, some of the plaintiffs had pre-emptive rights to subscribe to a prorata portion of the shares issued by defendant corporation in December 1952. In view of such rights, their title and fight *436 to some of the shares issued to them in December 1952 may now be fully vested in them and not subject to pre-emptive rights of other shareholders. For example, plaintiff Virginia Barsan individually and as executrix of Elie Barsan apparently owned 70 shares of defendant corporation prior to December 1952, and at that time there were apparently outstanding 633 shares of permanent stock of defendant corporation. She as an individual and as executrix therefore apparently had pre-emptive rights to buy 70/633 of the total ox 410 shares apparently issued by defendant corporation in December 1952 and would thus hold at least 70/633 of those 410 or 45 215/633 of the 170 shares actually issued to her as an individual and as executrix in December 1952, free of pre-emptive rights of other shareholders.
Since we have determined that the evidence in the record requires the conclusion, as a matter of law, that the shares issued in December 1952 were first authorized at the director’s meeting on December 11, 1952, pre-emptive rights of shareholders, with respect to the shares so issued at that time, would necessarily be determined as of that time. We see no justification on this record for going back to the year 1948 to determine pre-emptive rights with respect to the shares issued in December 1952. Also, in view of the provisions of Section 8623-35, General Code, we see no occasion for any meeting of shareholders in connection with these pre-emptive rights of shareholders.
It may further be observed that the participation of certain shareholders in the issuance of shares in December 1952 or other conduct by such shareholders may have been or may be either such as to estop them from exercising rights to subscribe for shares issued by defendant corporation at that time or such as to amount to a waiver of their rights in that respect. Thus, to the extent that shareholders are estopped to assert, or have waived, their pre-emptive rights to subscribe for shares issued in December 1952, and also to the extent that other shareholders do not elect to *437 exercise their rights to subscribe for such stock, some or all shares held by plaintiffs will be relieved from such pre-emptive rights.
An underwriter of an issue of corporate stock might agree to take all the shares not purchased by existing shareholders in the exercise of their pre-emptive rights. With respect to the shares issued to them in December 1952, plaintiffs are in a position somewhat similar to that of such an underwriter except that, instead of being required to buy shares not taken by shareholders in the exercise of their pre-emptive rights, plaintiffs may be required to sell back to the corporation sufficient shares to enable the corporation to provide for issuance, from the shares authorized to be sold in December 1952, of shares to which other shareholders will be entitled on exercise of their preemptive rights. In effect, plaintiffs are the owners of these shares subject to an option in other shareholders to purchase some of them from plaintiffs, through defendant corporation, by exercising their pre-emptive rights pursuant to Section 8623-35, General Code.
In order to limit the time within which and the manner in which this option of other shareholders may be exercised, plaintiffs, if they desire such relief and if such relief is not provided for by action of defendant corporation’s board of directors, should request the trial court to order defendant corporation’s board of directors to promptly determine reasonable terms and conditions and a reasonable time for those, other than plaintiffs, who were shareholders of defendant corporation on December 11, 1952, to purchase the shares authorized to be issued by defendant corporation’s board of directors on December 11, 1952, in proportion to their respective holdings at the price charged for such shares when they were issued in December 1952; and to notify those shareholders promptly as to their rights to subscribe. In view of *438 the delay which has transpired, we believe that any such terms and conditions should require payment of the full amount of the purchase price by shareholders desiring to purchase any of said shares and require such payment within a relatively short though a reasonable period of time after the shareholders have been notified. Thereafter, if there is any question with respect to a right of a subscriber for such shares to the shares claimed, that matter may, if necessary, be litigated as between such subscriber and plaintiffs.
The cause is remanded to the Court of Appeals with instructions to modify its judgment and for further proceedings in accordance with this opinion.

Judgment accordingly.

Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.